MARGUERITE GILBERT, PETITIONER-DEFENDANT, v. GILBERT MACHINE WORKS, INC., RESPONDENT-PROSECUTOR.

Argued January 18, 1939—Decided May 17, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the prosecutor, *Kellogg & Chance* (*R. Robinson Chance,* of counsel).

For the defendant, *Philip Monheit* (*Irving I. Jacobs,* of counsel).

The opinion of the court was delivered by

HEHER, J. This is a workman's compensation case. The employe died as the result of a streptococcic infection; and the question for decision is whether his widow, acting for

herself and the dependent children, has sustained the burden of proving that an abrasion of the outer surface of the nose, through which it is reasonably inferable the lethal germs were introduced, was the result of an accident arising out of and in the course of the employment. *R. S.* 1937, 34:15-1 *et seq.*

The compensation bureau resolved the issue in favor of the employer, and dismissed the petition. On appeal, the Atlantic Common Pleas made a contrary determination, and accordingly entered judgment for the dependents. The employer sued out a writ of *certiorari;* and it now becomes our duty to appraise the evidence and determine the fact. *Pamph. L.* 1932, *p.* 38; *R. S.* 1937, 34:15-66; *R. S.* 1937, 2:81-8. See, also, *Public Service Gas Co.* v. *Public Utility Board,* 84 *N. J. L.* 463; *affirmed,* 87 *Id.* 581; *Id.* 597; same case, *Id.* 705; *Erie Railroad Co.* v. *Public Utility Board,* 85 *Id.* 420; *Lighthipe* v. *Orange,* 75 *Id.* 365; *Van Riper* v. *North Plainfield,* 43 *Id.* 349, 353.

We are of the view that the dependents have not borne the burden of establishing by a preponderance of the evidence that the abrasion was an accidental injury in the statutory sense. The contention is that, on October 22d, 1937, the deceased employe, while operating a lathe at prosecutor's machine shop during the noon hour (he was also president of the corporation), was struck on the nose by "a piece of flying steel;" and, though there is evidence tending to show that two of his fingers were "caught in a lathe," and injured, the proofs do not afford a rational basis for the conclusion that he also suffered the claimed nasal abrasion by accident. As respects cause, there is no discernible relation between the two injuries. There is no presumption of the injury secondly mentioned from the occurrence of the first. The injuries to the fingers were indisputably minor in character. They were not in evidence when the employe entered the hospital on the ensuing October 28th. Of this more hereafter.

The attending physician, summoned on October 26th, testified that he found "a small cut on the left wing of the nose * * * very much inflamed," and that the patient informed him that, on the prior October 22d, "while working

on the lathe a piece of steel flew off and struck him in the nose." As the deputy commissioner ruled, the employe's version of the cause of the mishap thus given is not competent proof of the asserted fact. *Helminsky* v. *Ford Motor Co.,* 111 *N. J. L.* 369.

Nor did such proof come from any other source. On the contrary, the physician called in consultation on October 28th, when the illness reached a desperate stage, testified that the patient's nose "was one tremendous mass of inflammatory tissue," and because thereof it was "pretty hard to definitely localize anything on his nose;" that he questioned him, and asked him for "a history;" and that "the only history" he "got pertinent to this case was" that "he [the patient] had a sore on his nose for a period of a week, which sore he picked and later it became infected." The patient did not give him "a history of trauma." He saw "no evidence of injury" to the patient's fingers, nor was he informed that such an injury had been sustained. While both physicians agreed that "the history is always necessary," the attending physician admitted that he did not give the consulting physician "a history of trauma." His explanation was that the consulting physician "usually takes his own history." The attending physician also admitted that he gave no "history" to the hospital.

The consulting physician was also permitted, without objection, to read the following from the "history * * * as to this man's condition on his admission, given by the man," contained in the hospital record made under the witness' "direction:" "History of present illness: Patient had a sore on end of nose for over a week. About five days ago he picked at it with his fingernails. Subsequently he developed a spreading inflammation and great pain in nose."

The evidence of the deceased's fellow-servants does not suffice to establish the claimed accidental injury.

Petitioner's witness Minuth testified that, when he returned to work after lunch on October 22d, he found that one of Gilbert's fingers "was smashed and the other bruised," and that he "had a small cut on his nose." Gilbert, "looking at his fingers, told" the witness "to be careful it didn't happen to" him. Gilbert was at work the next day. The witness was

confronted with his own signed statement that he "never saw or heard of" Gilbert "getting hit on the nose or face while at work here;" and he explained that he signed the statement without reading it, and did not know what he "signed," although he said further that he told his inquirer he "never saw it [the accident] and as far as hearing it he [the deceased] didn't tell me about it but I had saw [*sic*] the cut on his nose." Later on, he testified that the statement in writing thus made "couldn't be correct," and that he had not given the information contained therein.

This witness did not testify that the "small scratch" on the end of the nose was not there when he left Gilbert at the lunch hour, although he observed he had not then suffered the injury to his fingers; and it is singular that petitioner's counsel, though he interrogated the witness as to the condition of the deceased's fingers at that time, made no such inquiry respecting his nose. And it is to be noted that Gilbert, in the conversation thus related, did not speak of an injury to his nose; he referred only to the injury to his fingers. Minuth's testimony is not reasonably susceptible of a broader interpretation. It is also to be remarked that traces of the serious finger injury described by this witness could hardly have disappeared within six days; and this reasonably leads to the conclusion that it was sustained long before the day in question. In this connection, Ginther, a co-employe, testified that he last saw the deceased on the Saturday preceding his death, and that the injury to his fingers had occurred a "couple of weeks before."

Stewart, a fellow-servant called by the employer, testified that he "knew" Gilbert had "had an accident to his face," but this was not offered as a fact within his personal knowledge. Concededly, he did not witness the alleged accident; and he later testified that, while on a sick visit to his home, Gilbert told him that "he had a carbuncle on his nose;" there was no mention of an accidental injury. The witness also said that on the day of the alleged accident he did not "observe any pimple or boil on" Gilbert's nose.

Speed, another co-employe called by the petitioner, testified that he saw Gilbert "on Friday, the same week before he

was taken sick," and that "he had a couple of fingers that were injured and he had a little scratch on his nose;" but this evidence obviously does not suffice to prove that the "little scratch" on the nose was the result of an industrial accident.

It is a circumstance of no little significance that none of the deceased's fellow-servants witnessed the claimed mishap, or had his attention called to it by the deceased at the time. In fact, the statements subsequently made by the deceased to his fellow-workers respecting the condition of his nose negative trauma as the cause.

The evidence given by the widow as to conversations with her husband regarding the cause of the abrasion was plainly inadmissible. The statements alleged to have been made by her husband were not part of the *res gestæ,* and therefore take the classification of hearsay. *Slayback Van Order Co.* v. *Eiben,* 115 *N. J. L.* 17; *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *Id.* 43; *affirmed,* 116 *Id.* 92; *Thompson* v. *Giant Tiger Corp.,* 118 *Id.* 10.

To find from these circumstances that the deceased's demise was the result of an accident arising out of and in the course of his employment is to indulge in pure surmise and conjecture. The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.,* based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Kuczynski* v. *Humphrey,* 118 *Id.* 321; *Manziano* v. *Public Service Gas Co.,* 92 *Id.* 322.

Moreover, the credibility of the witnesses on the crucial point of inquiry was sharply in issue; and, in the appraisement of the evidence adduced before the bureau, it is to be borne in mind that the deputy commissioner had the distinct advantage of personal observation of the witnesses. The demeanor of the witness is ofttimes a factor of major importance in determining the probative value and weight of his evidence. The tone of voice, the readiness or reluctance with

which questions are answered, his reaction to surprise and unexpected inquiries, his carriage and expression, his seeming interest or lack of it, are all circumstances of consequence known only to the judicial officer in whose presence the witness testifies; and so, there is a natural hesitation on the part of the appellate tribunal, confined as it is to the written word, to disturb factual conclusions of the judicial officer to whom the evidence has been orally presented.

The judgment of the Atlantic Common Pleas is accordingly reversed, and the judgment of the Compensation Bureau affirmed.