DOMENICK SERIGNESE. PETITIONER-RESPONDENT, v. AIR REDUCTION SALES CO., RESPONDENT-PROSECUTOR.

Argued January 21, 1947—Decided March 4, 1947.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the respondent-prosecutor, *Schneider & Schneider* (*Walter X. Trumbull,* of counsel).

For the petitioner-respondent. *Chazin & Chazin* (*Theodore S. Chazin,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J.  This is a workmen's compensation case in which the Bureau denied compensation but on appeal to the Hudson County Court of Common Pleas the judgment of the Bureau was reversed.

On January 30th, 1942, respondent started working for the prosecutor as a drill press operator.  While so employed, on October 8th, 1942, at one A. M., he struck his head against a bolt of the drill press, cutting the upper eyelid of the right eye, causing severe pain and drawing blood.  A moment later, while sitting down and cleaning the jig of the drill press with an air gun, copper chips were blown into the same eye.  He immediately notified the foreman of both incidents and the latter gave the respondent an eye cup of boric acid solution to wash out the eye.  There was no first-aid nurse or plant hospital.  Finding the eye became immediately inflamed and blurred and pain progressively increased, on October 13th, 1942, he went to a Brooklyn hospital and received treatment until July 3d of 1943.  Respondent reported to the plant foreman the receipt of medical treatment and asked the latter to put in a report of the injruy and was told that it would be done.

During the period from October 13th, 1942, to July 3d, 1943, he could see through the right eye, and though vision was blurred, no working time was lost.  Then, while in a locker room with a fellow employee, the latter opened a door in such a manner as to cause it to hit respondent's eyeglasses, breaking the right lens and cutting the upper eyelid.  The assistant plant foreman, seeing the accident, took him to an office and made out a report but did not provide nor advise medical treatment.  The eye became bloodshot and caused increased pain and became more inflamed, with the result that on July 8th Serignese went to a private doctor, who administered treatment until April, 1944, when it became medically determined that the eye was permanently blind.  In fact, the respondent became blind in the eye about four or five months after the second accident.  When informed by the private physician of the permanent blindness, he reported

to the company physician, and being told there was no hope for the eye, terminated his employment.

Prior to October 8th, 1942, vision in both eyes, corrected with glasses, was excellent. The work as a drill press operator required good eyesight since very fine drills were used, but after the accident of July, 1943, respondent was given large drills to work with because the eye condition deteriorated. Presently employed with another company, he has become very nervous, does not sleep well, is apprehensive as to the future and gets pains in his right eye and forehead and his eye becomes bloodshot.

The foregoing facts were testified by the respondent and the accident of October 8th, 1942, corroborated by a fellow employee who was an eye witness and that of July 8th, 1943, by the assistant foreman and two fellow employees who were eye witnesses, as well as the fellow employee causing the injury. Two expert medical witnesses testified they had examined him, and on hypothetical question it was their opinion that the two accidents were the cause of the loss of vision of the eye. The third expert produced by the respondent testified that apart from the loss of vision there was a further post-traumatic neurological disability of seven and a half per cent.

The prosecutor seeks to avoid liability on two grounds: first, no notice of the first accident of October 8th, 1942, was given by the respondent; and second, neither accident was the cause of the disability. Relative to the first contention, the plant foreman testified he had never received a report of an accident on October 8th, 1942; that he did not administer any medical aid to respondent on that date; that the fellow employee who testified seeing the accident of that date did not work opposite the respondent until the following year; and that when the respondent commenced employment with the company he wore dark sun glasses, claimed he was receiving medical treatment, and at one time stated he was blind in one eye.

Three expert medical witnesses testified on behalf of the prosecutor, two of whom stated that they had examined the respondent and in their opinion the eye disability was the

result of disease, a systemic condition from within, and neither accident had any influence on the eye. The third expert admitted the complaints of headache, nervousness, less sociability, bumping into people, were all logical and credible and resulted from the disability. The prosecutor also introduced into evidence the records of the Brooklyn hospital where the respondent was treated.

Upon close examination of the testimony of prosecutor's witnesses it appears the plant foreman was very vague as to dates in most cases but was certain that the fellow employee who saw the accident of October 8th did not work opposite the respondent until a year later. At first he testified that when the respondent commenced employment he wore dark glasses, but then he stated that he wore the dark glasses only when he commenced working on the machine and then finally changed his story to be that he only wore them occasionally. He stated that metallic chips could not enter respondent's eye since he was wearing glasses, but admitted the chips could have entered his eye if blown by an air gun.

The witness also testified the only time respondent had an accident was in April of 1942 when he suffered an abdominal strain, but later conceded the disability recurred in December of 1943, admitting knowledge of the latter as well. The witness admitted that despite the statements allegedly made by the respondent that he was blind in one eye and was receiving medical treatment at the time of the commencement of employment, it never occurred to the witness to have the respondent examined by a company physician.

In regard to the medical testimony adduced by the prosecutor that the blindness was the result of a systemic condition, the experts were unable to point to any disease or constitutional disorder which would account for the disability. Furthermore, when the respondent was examined in April of 1942 and in December of 1943 for the abdominal strain, no report of a systemic condition was made. Both experts emphasized that the systemic condition occurring over a period of many years resulted in adhesions in the eye and therefore the pupils could not be dilated. Yet the Brooklyn hospital report indicates that during the period of treatment between

the first and second accidents respondent's pupils were dilated very widely during treatment, indicating that the infection was not of long standing. Furthermore, one of the prosecutor's experts in a medical report to the insurance company stated that there was a remote probability of the eye having been infected from a blow, and did not refer to any systemic condition as the basis for the disability. On the stand he contradicted another medical expert of the prosecutor by saying the disability could have been caused by a blow.

The prosecutor relies heavily upon the report of the hospital where the respondent was administered treatment, pointing to the fact it contains no reference to a history of accidents as causing the disability. However, the report contains no history of any kind; hence it can be of no probative value in that respect.

To justify a finding for the respondent the evidence must preponderate in his favor, *Jones* v. *Newark Terminal and Transportation Co.*, 128 *N. J. L.* 190; *affirmed*, 129 *Id.* 58, and where the evidence justifies a finding in behalf of an employee and the employer seeks to attribute the disability to a cause for which he is not responsible, the burden of proof is on the employer to show such cause. *Atchinson* v. *Colgate & Co.*, 3 *N. J. Mis. R.* 451; *affirmed*, 102 *N. J. L.* 425; *Marshall* v. *C. F. Mueller Co.*, 135 *Id.* 75.

The evidence submitted by the respondent being highly persuasive and logical while that of the prosecutor uncertain, inconsistent and self-contradictory, the respondent is entitled to judgment

Judgment affirmed. with costs.