[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 79 
A writ of certiorari was allowed by Mr. Justice Bodine, of the former Supreme Court, to review the propriety of a judgment of the Hudson County Court of Common Pleas entered on May 24, 1948, affirming an award of additional compensation by the Workmen's Compensation Bureau to respondent under R.S.
34:15-27, for increased disability *Page 80 
amounting to 35 per cent of total permanent disability occurring subsequent to the original award to respondent in June, 1943.
Ducasse was injured in the course of his employment on October 7, 1940, while sliding a 150-pound valve on a skid into a truck. The employment was admitted; payments of temporary disability were made; and a consent judgment was entered in the original proceedings establishing petitioner's permanent disability at 15 per cent of total, which defendant also paid. The dispute is medical in nature and the weight and credibility to be given to plaintiff's proofs is the question presented to us. Following the accident of October 7, 1940, petitioner went the next evening to Dr. D'Ambola, who treated him until about the middle of December, for what he diagnosed as a "strain of the upper abdominal muscles." He was treated also by Dr. DePalma, to whom he had been referred by Dr. D'Ambola. Dr. DePalma, in turn, sent him to Dr. Wheeler for further treatment and he was then sent to Dr. Eisenberg who treated him for a period of three months. He was also seen by Dr. Clemens and Dr. Leon Lewis until the time of the original hearing on May 25, 1943. The findings of the treating physicians during this period may be summarized as being referred to the lower back and left leg. It is contended by petitioner that his condition became worse almost immediately after the award; that he then consulted Dr. Grinwiss, a neighborhood physician; was examined at the Orange Orthopedic Hospital; that on September 1, 1943, he went to Johns Hopkins Hospital in Baltimore, where he was examined by three doctors, and an operation was performed on his back by Dr. Walter E. Dandy, an eminent surgeon. Petitioner remained at the hospital for approximately ten days and remained out of work until January 31, 1944. He then returned to his employment, doing lighter work, and remained there until March 1, 1944. Thereafter, he secured employment as a taxicab driver. In September, 1944, petitioner claimed that he was compelled to remain in bed for a period of two weeks and that the pain in his back became so intense that he was hospitalized at St. Michael's Hospital in Newark *Page 81 
by Dr. D'Ambola, where he remained for five and one-half weeks. Part of the treatment at that institution consisted of an asbestos cast extending from a few inches below petitioner's neck down to his hips in which he remained for three weeks. The treatments at St. Michael's Hospital apparently effected no improvement in petitioner's condition and he remained home for a period of five months. He did not work again until March 1, 1945, when he resumed his employment at the taxicab company as a part-time clerk answering the telephone and other kindred light duties.
Petitioner contends that his condition is now worse than it was at the original hearing on May 25, 1943; that he cannot bend, his back is stiff, he has pain radiating down his left leg, he is constantly in pain day and night and cannot do any heavy work at all; that he has a list of the back and is unable to move normally in all directions; that he wears an abdominal belt constantly. Through his medical experts, Dr. D'Ambola and Dr. Watman, his partial permanent disability is established as high as 66 2/3 per cent of total.
In opposition to the lengthy case history hereinabove recited, the respondent contends that the award of increased permanent disability is erroneous in four respects: (1) that the increased disability, if any, resulted from the surgical operation for which there is no evidence produced as to the nature of or the necessity for such operation; (2) that petitioner had certain pre-existing injuries prior to October 7, 1940, which contributed in some degree to the disability, and that the award is erroneous in that there was no proof as to how much of the disability is due solely to the compensable accident; (3) that the judgment of the Common Pleas is against the weight of the evidence; and (4) that the principle of res adjudicata was violated by the award of compensation for increased incapacity predicated in part on evidence that the testimony forming the basis of the original judgment was erroneous.
The testimony discloses that prior to the injury involved here, petitioner had some osteo-arthritic changes in the lumbar vertebrae, a curvature of the spine with convexity to the right *Page 82 
side at the dorso-lumbar level, and apparently a non-fusion of the spinous processes of the first and lower sacral segments; that he was struck by an automobile in 1931, injuring his left leg, and that in 1937, he strained his back which was taped by a physician. Our review of the evidence leads us to the conclusion that these injuries left practically no residual effects in existence at the time of the accident of October 7, 1940.
With reference to the contention that petitioner's pre-existing physical defects and disabilities may be raised to defeat petitioner's award of compensation, in the case of BernsteinFurniture Co. v. Kelly, 114 N.J. Law 500, 177 Atl. 554(Sup.Ct. 1935), affirmed 115 N.J. Law 500, 180 Atl. 832(E. A. 1935); Marshall v. C.F. Mueller Co.,135 N.J. Law 75, 50 Atl. (2d) 158 (Sup.Ct. 1946), the court held,inter alia, that the act extends to the weak as well as to the strong, and an employer takes his employees with their physical defects and disabilities.
The main controversy rages over the surgical operation and its effects performed at Johns Hopkins Hospital by Dr. Dandy on September 1, 1943. Petitioner contends that the operation was performed for the removal of the intervertebral disc. Dr. Dandy is deceased and his testimony as to the minutiae of the operation was not available. The records of Johns Hopkins Hospital were not produced. Petitioner testified, and properly so, that an operation was performed by Dr. Dandy upon his lower back. The testimony as to the precise nature of the operation was excluded under the hearsay rule. All the physicians conceded that petitioner had been operated upon at Johns Hopkins Hospital. Dr. Watman testified that he had examined the X-rays taken on January 10, 1947, and found that there were residual effects of a ruptured disc. Petitioner bears a healed 3 1/2-inch vertical post-operative scar in the lumbo-sacral region. We pause here to observe that it would have been very helpful to the court if petitioner had produced the records of Johns Hopkins Hospital with supporting testimony thereon. Although we are able to arrive at a decision on the evidence submitted, we cannot refrain from pointing out that *Page 83 
counsel should have made some effort to procure the hospital records and supporting testimony or explained why they were not offered in evidence. It is conceded by appellant that petitioner's disability was increased following the operation. Dr. Eisenberg, testifying for the appellant, said that the structural damage caused by the surgery increased the disability from five per cent of total to 15 per cent. Dr. Klaus, also testifying for the appellant, said that following the operation the disability had increased from five to 7 1/2 per cent of total, to 15 to 20 per cent of total.
We are impressed with the evidence presented by petitioner. We think he was fully justified, following the injury on October 7, 1940, in pursuing his endeavors to alleviate the effects of his injuries. The fact that the operation was unsuccessful and resulted in increased disability does not, under the law, deprive a conscientious and deserving employee from the benefits of the statute. See Selak v. Murray Rubber Co., 108 N.J. Law 548,159 Atl. 93 (E. A. 1931). Also, Kelly v. Lembeck BetzEagle Brewing Co., 86 N.J. Law 471, 92 Atl. 282 (Sup.Ct.
1914). As was said by Mr. Justice Perskie in Lazzio v. PrimoSilk Co., 114 N.J. Law 450, 177 Atl. 251 (Sup.Ct.
1935), affirmed 115 N.J. Law 506, 180 Alt. 881 (E. A.
1935):
"Should one afflicted with what is presently characterized as an incurable disease, simply sit by, abandon all hope and do nothing about it? Such a course of conduct is not followed by the average, ordinary, prudent person. It is unnatural to expect one to so act. It is not human."
The happening of the accident and injuries caused thereby have been established, following which we have a history of pain and incapacity suffered by plaintiff, continuous and persistent medical treatments, climaxed by an operation (which obviously failed of its purpose), and increased partial permanent disability. Petitioner legitimately was attempting to effect a cure and underwent the operation for that purpose, although the results were not beneficial, he is nevertheless, under the cases cited, entitled to be compensated for his present increased disability stemming from the original injury. Our courts have *Page 84 
consistently held that, irrespective of prior awards for disability, additional compensation may be awarded where the disability is proved to have increased. The Bureau has continuing jurisdiction for the purpose of modifying the award of compensation to accord with an after occurring enlargement or diminution of the incapacity so found to have ensued from the established compensable injury. See the opinion of Mr. Justice Heher, speaking for the Court of Errors and Appeals, in Drake v.C.V. Hill Co., 117 N.J. Law 290, 187 Atl. 637 (E. A.
1936). Cf. DeSantis v. Turner Construction Co.,120 N.J. Law 590, 1 Atl. (2d) 202 (Sup.Ct. 1938), opinion by Mr. Justice Case.
Where, as here, the evidence justifies a finding for the plaintiff and the defendant seeks to attribute the disability to some cause unrelated to the accident in question, the burden of proof is cast upon the defendant to establish such other cause. The defendant has failed to carry that burden. Serignese v. AirReduction Sales Co., 135 N.J. Law 317, 51 Atl. (2d) 543(Sup.Ct. 1947).
The evidence produced on behalf of the petitioner establishes, in our judgment, that his increased disability was the natural and probable result of the accident on October 7, 1940, in contra-distinction to the claims of the appellant that no causal relation exists. Petitioner has, therefore, brought himself within the protection of the doctrine of "the more probable hypothesis" as enunciated in Sunkimat v. Senger Coal IceCorporation, 137 N.J. Law 103, 58 Atl. (2d) 226 (Sup.Ct.
1948). Opinion by Mr. Justice Wachenfeld, wherein Mr. Justice Wachenfeld stated:
"The petitioner need only establish the claimed conclusion from the facts is a probable or a more probable hypothesis with reference to the possibility of other hypotheses. Gilbert v.Gilbert Machine Works, Inc., 122 N.J.L. 533, 6 A.2d 213;Jones v. Newark Terminal Transportation Co., 128 N.J.L. 190, 24 A.2d 564, affirmed, Jones v. Court of Common Pleasof Essex County, 129 N.J.L. 58, 28 A.2d 96; Marshall v.C.F. Mueller Co., 135 N.J.L. 75, 50 A.2d 158; Serignesev. Air Reduction Sales Co., 135 N.J.L. 317, 51 A.2d 543."
Considering all of the evidence, and its rational inferences, we hold that it preponderates in favor of the hypothesis tendered *Page 85 
by plaintiff and we arrive at the inescapable conclusion that plaintiff's increased disability is causally related to the accident in question.
Our determination is dispositive of the issue here. A consideration of other arguments advanced by appellant convinces us that they are without merit.
The judgment below is affirmed with costs.