Despite my great respect for the opinion of my colleagues, I do not agree with the result reached in this case.
I think the court below erred in awarding compensation to petitioner-respondent as a total dependent. At the time of decedent's accident the Workmen's Compensation Act provided,R.S. 34:15-13: "In case of death, compensation shall be computed, but not distributed, on the following basis:
"a. For one dependent, thirty-five per cent. of wages.
"b. For two dependents, forty per cent. of wages.
 * * * * * * *
"g. The term `dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or death, namely: * * * wife, * * * children, * * *. Dependency shall be conclusively presumed as to the decedent's widow and natural children under sixteen years of age who were actually a part of the decedent's household at the time of his death. * * * The foregoing schedule applies only to persons wholly dependent, and in the case of persons only partially dependent, except in the case of the widow and children who were actually a part of the decedent's household at the time of his death, the compensation shall be such proportion of the scheduled percentage as the amounts actually contributed to them by the deceased for their support constituted of his total wages and the provision as to a ten-dollar minimum shall not apply to such compensation. * * *" *Page 46 
It is to be noted that paragraph "g" defines the term "dependents" and also fixes the method of determining the fact of dependency, the amount thereof whether total or partial, according to the factual situation.
The court below found: "the dependency of the widow in a case such as this is determined by her status at the time of the accident and not as of the date of her husband's death," "that where, as here, the death is the direct result of the accident the nature of the dependency of the widow is determinable as of the date of the accident and not as of the date of the death," and "that at the date of the accident the petitioner was a total dependent of the deceased since she was actually part of his household, and her status as a dependent was in no way affected by the fact that she worked and contributed to her own support."
On June 12, 1944, the decedent, George Fitzsimmons, met with an accident which arose out of and in the course of his employment and which aggravated a tubercular condition. On July 20, 1948, a little more than four years later, decedent died as a result of the injuries sustained in the accident. Between the date of the accident and the time of his death Fitzsimmons was in and out of various tuberculosis sanataria and at his home until August, 1946, when the petitioner-respondent caused two adult sons physically to eject him from the house. Thereafter decedent lived in a rented room, in hospitals in Verona, New Jersey, and Butler, Pennsylvania, where he died. At the time of the accident decedent lived with his wife and seven of their eight children. For the support of the household decedent contributed $50 a week, each of three employed daughters $10 a week, and the wife, a part time employee of the Telephone Company, $28 a week. These sums, with an allowance of $25 a month from the U.S. Government because of the navy service of a son, made up a common fund managed by petitioner-respondent.
The petitioner-respondent and decedent were married in St. Cecelia's Church in Kearny on June 18, 1919, and it is assumed each took the other "for better or worse, richer or poorer, in sickness and in health." Marital difficulties of long *Page 47 
standing between them came to a head in September, 1945. It may be best described in petitioner-respondent's own words:
"Q. Will you tell us his personal habits about the house? A. He refused to keep his dishes separately. What do you mean by personal habits? Do you mean just pertaining to his sickness?
"Q. In respect to your personal relations with him, what was the difficulty? A. Well, in September, 1945, I believe it was, — I mean the man is gone — I don't want to take anything away from him in any way, but —
"Q. I mean as far as you are concerned? A. Never in our married life did we ever have peace in our home, strange as that may seem, and in September, 1945, I think it was, I just got to the end of my rope that I couldn't take anything any longer, and that is when I asked him to leave. He frankly refused to leave, and I couldn't walk out, and it was a case that someone had to leave, we had to be separated, and from that time on I didn't live with him as man and wife, and for that reason he stopped the support.
"Q. And after he was released from the sanatorium in Verona about January 1, 1946, what was his demand, if any, with respect to having relations with you? A. None at all because I mean as far as I was concerned that was all gone, being he wouldn't leave me, we were living practically as strangers under the same roof. He occupied a bed —
"Q. Did he have any relations with you — A. No, sir, because he knew it was at an end. I had made that very clear to him that it was a case of being finished, but we couldn't get separated because he wouldn't go and I couldn't."
And again:
"Q. And you deprived him of food, you refused to give him food, didn't you? A. No, sir. He had meals at our table until the day he went to Verona, and occupied a room that I got out of. He occupied the room that we usually used, and I went into the room with one of the children.
"Q. That was in 1945; but in 1946 he left your home or you forced him out? A. Yes, in August.
"Q. He didn't stay there after that? A. No. *Page 48 
"Q. He did not occupy a room with you in 1946? A. No.
"Q. When did Mr. Fitzsimmons stop giving you any money at all? A. I believe it was in April, 1946."
In the spring or summer of 1946 she had the locks on the home changed. When the decedent broke into his house, she called the police charging the decedent with the breaking. This dispute was apparently adjusted and decedent returned to his home. She did not visit the decedent from the time he was ejected from his home until his death, nor did she attend his wake or funeral. The decedent was provident enough to leave funds with his attorney in order that he might be afforded a decent burial.
Petitioner-respondent made her claim for compensation on August 21, 1948, and the Bureau awarded her and one daughter, Patricia Fitzsimmons, compensation based on total dependency. The appellant has never questioned and does not now question the total dependency of decedent's daughter Patricia.
The number and identity of dependents is determined as of the date of the accident where death arose out of the accident, and as of the date of death where the death came from any cause other than the accident. Wathne v. Midland Construction ContractingCo., 125 N.J.L. 473; Catelli v. Bayonne Associates, Inc.,3 N.J. Super. 122. Admittedly the petitioner-respondent was the wife of decedent and a member of his household at the time of his accident. She was, therefore, one of the class of persons potentially dependent upon decedent. The next questions are: was she a dependent and if so, the extent of her dependency. If she had been actually a part of decedent's household at the time of his death, the statute raises a conclusive presumption that she was a dependent. Such, however, is not the situation here. The presumption did not take effect and her status as a dependent became a problem of factual proof in the circumstances. The proof, through her own words, discloses that their separation was through her fault; that she consented and acquiesced in the separation and asserted her complete independence of her husband. The fact that decedent was *Page 49 
suffering from an active case of tuberculosis resulting from the industrial accident does not place the fault upon his shoulders. There was no proof that decedent committed a matrimonial offense which would justify petitioner-respondent effecting a separation. True, there is no rule of law which compels a husband and wife to live together, and if the wife chooses, as she did in this case, to separate herself from him and assert her complete independence of him through no fault of his, his obligation to support her ceases and her dependency, in the legal sense, ends.
The test of dependency of a wife upon the husband is not governed by the amount of money contributed to or expended upon the wife. It is based upon the duty imposed upon the husband by law of supporting the wife. Comparri v. James Readding, Inc.,120 N.J.L. 168; Alexander v. Cunningham Roofing Co., Inc.,124 N.J.L. 390; affirmed, 125 N.J.L. 277; Holden v. PublicService Electric Gas Co., 127 N.J.L. 405. Thus on a number of occasions our appellate courts have held that a widow does not lose the benefit of the statutory conclusive presumption of dependency upon her husband though they did not occupy a common household if the separation was without fault upon her part, was the result of a matrimonial offense committed by the husband and he was under a continuing duty to support her. Schmid v. StantonForging Co., 104 N.J.L. 471; Alexander v. Cunningham RoofingCo., Inc., supra; Koerner v. J.I. Hass Co., Inc., 126 N.J.L. 193; Holden v. Public Service Electric Gas Co., supra;Jefferson v. Interstate Metals Co., 134 N.J.L. 110. The petitioner-respondent failed to bear the burden of proof of establishing facts which would bring her within the rule pronounced in the Schmid, Alexander, Koerner, Holden andJefferson cases. Gilbert v. Gilbert Machine Works, Inc.,122 N.J.L. 533.
The court below fell into harmful error in concluding: "the nature of the dependency of the widow is determinable as of the date of the accident and not as of the date of death." In so finding the court applied the conclusive presumption as of the date of the accident instead of as of the time of death *Page 50 
and in effect, amended the statute to read: "dependency shall be conclusively presumed as to the decedent's widow who was actually a part of decedent's household at the time of his accident." Taking this view the court considered the testimony concerning the separation and the circumstances surrounding it of no materiality. Since the conclusive presumption of dependency did not operate in this case, the fact that petitioner-respondent and others contributed to her support and the circumstances surrounding the separation became material.
The fees allowed counsel for services in the Workmen's Compensation Bureau and the Essex County Court seem high.
I vote to reverse the judgment of the Essex County Court and to remand the cause to the end that reconsideration be given to the dependency status of the petitioner-respondent at the time of decedent's death in the light of the views herein expressed. The fees awarded counsel for services in the Bureau and in the court below should likewise be re-examined for reasonableness in the circumstances.