37 N.J. Super. 522 (1955)
117 A.2d 678
JOHN HEIDEL, PETITIONER-APPELLEE,
v.
WALLACE & TIERNAN, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided October 19, 1955.
*523 Mr. Isidor Kalisch, attorney for the respondent-appellant.
Messrs. Talisman & Golat (Mr. Solomon Golat on the brief), attorney for the petitioner-appellee.
CONLON, J.C.C.
The employer appeals from an award in the Division of Workmen's Compensation on the sole ground that the amount allowed for permanent disability was excessive. There is no disagreement between the parties as to the facts, and the issue is based entirely upon a construction of the Compensation Act (R.S. 34:15-1 et seq.).
On October 14, 1952 the petitioner sustained a compensable accident as a result of which he suffered an amputation of his lower right arm about 3 1/2 inches below the elbow. The respondent furnished all the required medical treatment, care and hospitalization and paid the necessary allowances for temporary disability and incidental expenses. No question is raised as to any of those items. In addition, the Division made the following award for permanent disability:

 1. 100% of the right hand or 230 weeks @ $30 per
 week ............................................ $6,900.00
 2. 7 1/2% of the right arm (i.e., injury to the
 upper arm), or 22 1/2 weeks @ $30 ............... 675.00
 3. 7 1/2% of total for a neurosis, or 41 1/2 weeks @ $30
 per week ........................................ $1,237.50
 _________
 Total Award ......... $8,812.50

*524 The respondent, while not completely concurring in the other allowances, appeals only from the allowance of the $6,900 for loss of the right hand and contends that no part of that amount should have been allowed or, if it were allowed, that an equal amount should have been deducted from the award for reasons hereinafter stated. The allowance of 230 weeks is referred to as "loss of the right hand" because the statute R.S. 34:15-12 (vv) provides that "amputation between the elbow and the wrist shall be considered as the equivalent of the loss of a hand * * *," and compensation for the loss of hand is fixed by the statute (R.S. 34:15-12(o)) at 230 weeks.
The reason the respondent objects to the award is that on September 13, 1949 while he was in the employ of this same respondent the petitioner suffered a crushing injury to his right hand when it was caught in a power press. As a result he suffered an amputation of the major portion of four fingers of his right hand. After an informal hearing the petitioner was awarded, in addition to the usual allowances, permanent disability of 230 weeks under section R.S. 34:15-12(o) of the statute which fixes the loss of four fingers of one hand in the same category as loss of the entire hand and provides the same award for each. As indicated above, the act also provides that the compensation for an amputation below the elbow shall be considered as the equivalent of a loss of the hand. The gist of the respondent's position is that the petitioner, having previously been compensated for the total loss of his hand, is not entitled to further compensation for injury to the part that remains; "that a payment of compensation must be consequent not upon the mere occurrence of an injury but rather upon disability which may result therefrom."
Parenthetically, it might be noted that since his second accident the petitioner wears an artificial arm though it serves mainly for appearance since he cannot use it to perform its usual functions.
The precise question here presented does not seem to have been considered in this State by our appellate courts, although *525 there is unanimous authority for the proposition that the amount of permanent disability shall not be decreased merely because the physical member affected was not functioning to 100% of its capacity at the time of the accident. Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 (Sup. Ct. 1935), affirmed 115 N.J.L. 500 (E. & A. 1935); Masses v. Central Foundry Co., 131 N.J.L. 41 (Sup. Ct. 1943); Ducasse v. Walworth Manufacturing Co., 1 N.J. Super. 77 (App. Div. 1948). It should be noted also that in this State there is a special statutory provision relating to loss of vision and a separate section relating to the enucleation of eyes. By amendment enacted in 1945 section, R.S. 34:15-12 (ss) provides that there be a specific award for the enucleation of an eye of 66 2/3% of daily wages during 25 weeks "in addition to such compensation, if any, as may be allowable under subsection s" for the loss of vision.
When recourse is had to the decisions of other jurisdictions as a guide to the solution of the problem here presented, it is found that most authorities relate to situations where a partially blind worker lost the remaining sight in his eye or suffered the enucleation of the same eye. That situation is not now open to discussion in this State it having been determined by McCadden v. West End Building & Loan Ass'n, 126 N.J.L. 1 (Sup. Ct. 1940), affirmed 127 N.J.L. 245 (E. & A. 1941); cf. Judge Gaulkin's opinion in Burrock v. Tung Sol Lamp Works, Inc., 30 N.J. Super. 456 (Cty. Ct. 1954), and by the amendment to the act above mentioned. Many of the other cases deal with successive injuries which resulted in permanent disability and are not helpful since the New Jersey 1% statute R.S. 34:15-95 covers them expressly. Many other states have enacted statutes which provide that where a worker had sustained a previous injury, the award for the subsequent injury shall be confined to the effects flowing from it alone and not in conjunction with the prior injury. Paul v. Glidden Co., 184 Md. 114, 39 A.2d 544 (1944); Syracuse Cabinet Co. v. Leedy, 89 Ind. App. 518, 167 N.E. 149 (1929); Princeton Mining Co. v. Lindsay, 116 Ind. App. 23, 58 N.E.2d 944 *526 (1945); Lewis v. Lincoln Engineering Co., 213 App. Div. 545, 210 N.Y.S. 481 (1925); Gardner v. Industrial Accident Comm., 28 Cal. App.2d 682, 83 P.2d 295 (1938). Of course no similar provision is found in our act.
If, as has been indicated above, no general principles of liability have been established to control the instant case, what logical approach should be taken in construing the New Jersey Statute? The appellant presents the problem succinctly in its brief as follows:
"The Workmen's Compensation Act is a substitute for a common law action of tort against an employer. In an action for tort, awards may be made for injuries although no permanent disability arises from these injuries. In like manner, the Workmen's Compensation Act provides for the payment of temporary disability to cover such a contingency. R.S. 34:15-12a. With respect to permanent total disability and permanent partial disability, it is obvious that a payment of compensation must be consequent not upon the mere occurrence of an injury but rather upon disability which may result therefrom."
It must be conceded that if the appellant's foregoing postulation is correct, then the petitioner in this case cannot recover, for while it is true that he sustained a distressing amputation of his right forearm he had already been compensated to the full extent for the loss of his hand and under the statute he is entitled to no more compensation for the loss of a forearm than for a loss of a hand. Technically, therefore, he is seeking double compensation for a single disability within the strict meaning of that term.
A comparison of the New Jersey statute with those of other jurisdictions reveals that it was never intended in this State that an employer was entitled to the physical faculties of an employee as they existed at the time of employment, and that all the protection the employee has is to be compensated for his loss of earning power or disability as it is termed. The language of the New Jersey statute is as follows (R.S. 34:15-12(w)):
"In all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently *527 impaired, the compensation shall be sixty-six and two-thirds per centum (66 2/3%) of daily wages, and the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule." (Italics added.)
By contrast the following is the corresponding provision of the New York statute:
"Other cases. In all other cases in this class of disability the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability." McKinney's Consolidated Laws of New York, Workmen's Compensation Law sec. 15(3)(v).
The annotations in 17 A.L.R. 205 and 118 A.L.R. 731 indicate that the criterion in assessing permanent disability in most states is the loss of actual or potential wage-earning ability.
The theory under the British Workmen's Compensation Act (15 & 16 Geo. 5, c. 84-1925, as amended) was much the same until it was repealed in 1946 in favor of the National Insurance (Industrial Injuries) Act of 1946 (9 & 10 Geo. 6, c. 62). In fact, under the former act all cases of permanent disability were treated according to the mentioned standard of wage earning ability as there was no schedule of specific awards contained therein. Section 9; cf. Irons v. Davis & Timmins Ltd. (1899), 2 Q.B. 330. Under the present act, the theory is totally different and the wage earning capacity factor is expressly stated to be immaterial. The current criterion is spelled out as follows:

"Sec. 12 DISABILITY

(2) For the purposes of this section, the extent of disablement shall be assessed by reference to the disabilities incurred by claimant as a result of the relevant loss of faculty, in accordance with the following general principles:
(a) Save as hereafter provided in this subsection, the disabilities to be taken into account shall be all disabilities (whether or not involving loss of earning power or additional expense) to which *528 the claimant may be expected * * * to be subject * * * as compared with a person of the same age and sex whose physical and mental condition is normal."
An examination of the cases construing the New Jersey statute establishes conclusively that disability or loss of wage-earning capacity plays no part in the determination of an award for partial permanent disability.
Thus it was early pronounced:
"And the term `disability' is not restricted to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life." Burbage v. Lee, 87 N.J.L. 36 (Sup. Ct. 1915).
Subsequent to the above case awards for partial permanent disability have been made when the worker's wage earning ability has not been impaired in the slightest degree. Hercules Powder Co. v. Morris County Court of Common Pleas, 93 N.J.L. 93 (Sup. Ct. 1919) (worker lost one testicle); Sutkowski v. Mutual Chemical Co., 115 N.J.L. 53 (Sup. Ct. 1935) (perforation of worker's nasal septum with diminution of sense of smell); Stepnowski v. Specific Pharmaceuticals Inc., 18 N.J. Super. 495 (App. Div. 1952) (effemination of worker through handling female hormones); and recently by the Supreme Court in Calabria v. Liberty Mutual Ins. Co., 4 N.J. 64 (1950) (perforation of nasal septum). The court used the same standard in each of these cases  whether the worker had lost any physical function detracting from his body's efficiency.
From the foregoing it must be concluded that unlike most other jurisdictions, the theory in New Jersey as to awards for permanent disability is not based upon the interpretation of the word "disability" in its narrow sense indicating impairment of working or earning capacity. It is based rather upon a broad interpretation connoting the loss of any physical function or any impairment to the worker as a physiological unit. In fact, it appears that the New Jersey theory is comparable to that found in the present *529 English act. The schedule of specific awards must be construed in the light of the underlying theory of the act. 2 Larson, Workmen's Compensation Law, section 58.10, page 2.
In the instant case, therefore, when the petitioner sustained his second injury and the consequent amputation of his forearm, he suffered a loss of physical function which detracts from the former efficiency of his body in the ordinary pursuits of life, and consequently there was a new and compensable loss upon which an award for permanent disability was properly predicated.
The determination and judgment of the Division of Workmen's Compensation is affirmed.