**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3844-18T2

KIRK UNGER,

      Petitioner-Respondent,

v.

MOONEY CONSTRUCTION,

      Respondent-Appellant.

_____

Submitted January 7, 2020 - Decided February 20, 2020

Before Judges Currier and Firko.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2017-913.

Lois Law Firm, LLC, attorneys for appellant (Michael Gervolino, on the briefs).

Hobbie, Corrigan & DeCarlo, PC, attorneys for respondent (Michael Robert Hobbie, of counsel; Chelsey M. Rowe, on the brief).

PER CURIAM

Appellant Mooney Construction appeals from the order for judgment finding petitioner Kirk Unger to have a 45% partial total disability as a result of injuries to his ankles and right shoulder incurred during his employment. Appellant contends there was insufficient evidence to support the award, requiring its reversal. We affirm.

While working for appellant as a framer, petitioner fell approximately sixteen feet off a scaffold. He fractured both ankles and tore the rotator cuff and labrum in his right shoulder. Petitioner underwent surgery to both ankles, with the placement of plates and screws. He had arthroscopic surgery to the shoulder. During the trial, petitioner described the pain and swelling and limitation of motion he continued to experience in both of his ankles and his shoulder.

Petitioner testified the residual problems from his injuries prevented him from returning to work as a framer. About a year after the accident, petitioner began to work as a handyman. Although he has pain in his ankles and shoulder, he stated he is able to work a couple of hours a day doing tasks such as installing doors, painting and tile work.

Dr. Lance Markbreiter, an orthopedic surgeon, evaluated petitioner in April 2018. He found petitioner had almost no function in the right shoulder

A-3844-18T2

and he would never regain normal strength in his right arm. Therefore, the doctor opined there was a 90% permanent disability of the right shoulder.

In examining petitioner's ankles, Dr. Markbreiter found a significant loss of motion – petitioner could not move his right foot up and down, and he had no side to side motion in the left foot. The doctor determined there was a 75% permanent disability in the right ankle and a 60% permanent disability in the left. He stated further that petitioner would continue to have pain in his ankles and shoulder and that his range of motion in the affected areas would worsen over time.

Appellant presented Dr. Jeffrey France as an expert in the evaluation of disability and impairment ratings, including workers' compensation cases. He evaluated petitioner in November and December 2017. He reported he found petitioner had a normal range of motion in his ankles and a "mild motion deficit" in his right shoulder. The doctor found "some mild weakness" in the shoulder but no weakness in either ankle. Dr. France concluded petitioner had a 10% disability of the right shoulder and a 5% permanent disability in both ankles.

Appellant also presented three witnesses who had surveilled petitioner. The first investigator followed petitioner for four days in September 2018. On the first day, the witness videotaped petitioner working for an hour at a private

residence doing landscaping and riding a lawn mower. He described petitioner using a hedge clipper to trim bushes and a hand-held power saw to cut branches. On the third day, petitioner was observed carrying a putty knife and a tray into a home. Petitioner worked at a second house that day, using several tools from a toolbox in his truck. On the last day, the investigator described petitioner working at a house carrying paint cans and rollers. In total, the investigator captured two and a half hours of video over the four-day period.

A second investigator observed petitioner for approximately eight hours on January 22, 2018. He saw petitioner working for approximately ninety minutes during that time. The investigator produced forty-two minutes of footage that showed petitioner working on the back of a residence, where he moved a ladder, repaired siding that was falling off the residence and put up some new siding. The witness estimated the ladder to be between two to four feet high.

A third investigator surveilled petitioner for ten hours on January 26, 2018, producing a twenty-five-minute video of petitioner's activities. The footage showed petitioner doing "some brief shoveling" (two or three shovel motions), picking up an empty trailer with both arms, and throwing two cement blocks underhand to the side of the trailer.

The judge of compensation issued a comprehensive oral decision on March 12, 2019. He described petitioner as "a very credible witness." The compensation judge reviewed the extensive medical records, and the expert testimony. He found Dr. Markbreiter had "outstanding credentials and was an excellent witness."

The compensation judge stated he had "closely reviewed the six days of surveillance," noting the six days only resulted in three to four hours of footage. He stated:

> The surveillance did not show anything that was inconsistent with the petitioner's testimony. Over the six days, it did show him doing some handyman type activities, such as limited hammering overhead for short periods, standing approximately two to three steps off the ground on the step ladder or step stool, and some trimming of bushes. There was nothing shown that would in any respect significantly detract from [petitioner's] testimony.
>
> In a light most favorable to [appellant], the surveillance showed a bit of freedom of movement of the shoulder and ambulation beyond what I expected. On the other hand, considering [appellant] spent six days following the petitioner, they found nothing that contradicted his testimony. In fact, over the six days, [petitioner] is not seen doing anything that could remotely be considered recreational. If anything, the surveillance reinforced his testimony that his activities were substantially limited outside of work, and that there was no footage of him doing anything but driving

A-3844-18T2

or going to convenience stores beyond the limited handyman work referenced earlier.

In discussing petitioner's permanent disability, the compensation judge noted "both doctors find permanent disability as to the shoulder and both ankles. The issue is the extent of the disability." He accorded

> much greater weight to Dr. Markbreiter's findings [because] he is a very experienced treating orthopedist, having performed many ankle surgeries. . . . His range of motion findings were more consistent with the credible complaints of [petitioner] as to his feet. Dr. France is not a treating orthopedist and confines his practice to defense exams.

The judge of compensation found it difficult to accept "that given the extent of the bilateral foot injuries with the significant remaining hardware, that there is no restriction of range of motion or swelling."

In continuing his analysis, the compensation judge stated:

> As to the effect on [petitioner's] life, the injuries have very significantly altered his life. He worked in construction with a major component of his work being that as a framer for many years. In addition to his own testimony that he cannot do the work, the treating shoulder surgeon, Dr. Markbreiter and Dr. France all agree that he has a permanent lifting restriction of [twenty] pounds.
>
> In addition, [petitioner] has significant difficulty with being on his feet for extended periods of time. He has given up his profession and now works as a part time handyman earning much less money. . . .

I find his testimony credible that the injuries have very significantly impacted his ability to do the enjoyable activities of his life, such as skiing, playing ice-hockey, running and going to the gym. In addition, he has daily pain and must rest after extended periods of activity. . . .

In assessing the appropriate percentage of disability, I must assess the injuries as [a]ffecting [petitioner] in totality. In the event of a future application to modify the award, if any of the conditions worsen, it's also important that I approximate the disability. Based upon my detailed review of the testimony, review of the documentary evidence, review of the surveillance tapes, and my experience as a Worker[s'] Compensation Judge, I find [petitioner] has sustained a [45%] partial total disability. It is apportioned [22.5% partial total] disability as to the [right] shoulder, . . . [30% to the] right [ankle], and [27.5% to the] left [ankle]. . . .

The award entitles [petitioner] to 270 weeks of disability, at the rate of $538 per week, for a gross sum of $145,260.

Appellant contends on appeal that the judge of compensation: (1) did not have objective credible medical evidence to support his findings of permanent residual disability; and (2) failed to properly consider petitioner's ability to work after the accident. Therefore, appellant seeks the reversal of the permanent disability finding.

Our review in a workers' compensation case "is limited to 'whether the findings made could reasonably have been reached on sufficient credible

7

evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). Our review of a judge's interpretation of an issue of law is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

Under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -146, a worker may apply for permanent disability benefits if a work-related injury has resulted in a permanent disability. N.J.S.A. 34:15-12. The statute defines a permanent disability as:

> [A] permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's working ability.
>
> [N.J.S.A. 34:15-36.]

In Perez v. Pantasote, Inc., 95 N.J. 105, 118 (1984), the Supreme Court held that "[an] employee must first prove by demonstrable objective medical evidence a disability that restricts the function of his body or its members or

organs." The employee must then "establish either that he has suffered a lessening to a material degree of his working ability or that his disability otherwise is significant and not simply the result of a minor injury." Ibid. The employee has "[t]he burden of proving both of these elements . . . ." Ibid. (citing Januszewski v. Pub. Serv. Coordinated Transp., 9 N.J. 107, 114 (1952)).

As stated, the first prong requires a showing of objective evidence of a functional restriction of the body. The determination cannot rest upon the employee's "subjective complaints." Perez, 95 N.J. at 116.

"Once a permanent disability is proven by such objective evidence, the next issue is determining whether the injury is minor or is serious enough to merit compensation." Ibid. "Two major components of the lessening criterion are 'a material degree' and an 'employee's working ability.'" Ibid. "Material degree means an appreciable degree or a degree substantially greater than de minimis." N.J.S.A. 34:15-7.2; see Perez, 95 N.J. at 116.

The second component of the lessening criterion "refers to [an employee's] capability to perform his work duties, as differentiated from disability in the broader sense to carry on the 'ordinary pursuits of life.'" Perez, 95 N.J. at 117 (quoting Heidel v. Wallace & Tiernan, 37 N.J. Super. 522, 528-29 (Cty. Ct. 1955)). As a result, "the question . . . is whether there has been an

appreciable impairment of the employee's ability to work.  If there has been, then the lessening criterion has been satisfied and the claim is compensable." Ibid.  "However, if there has not been an appreciable impairment of the employee's ability to work, then the inquiry . . . . is whether there has been a disability in the broader sense of impairment in carrying on the 'ordinary pursuits of life.'"  Ibid.

Appellant argues that the judge of compensation erred in his determination of permanent disability because he relied on subjective evidence from petitioner and gave greater weight to Dr. Markbreiter's findings than those of Dr. France. Appellant contends that both petitioner and Dr. Markbreiter testified that petitioner could not lift his right arm overhead.  But the video evidence demonstrated to the contrary because some footage showed petitioner lifting his right arm over his head.  Therefore, appellant asserts that both petitioner and Dr. Markbreiter were not credible witnesses and petitioner has not presented objective credible evidence of a permanent disability.  We disagree.

Petitioner testified that he could not lift his right arm higher than his shoulder without using his left arm to push it up.  If he uses his left hand to put the right arm overhead, he stated he can keep the right hand over his head for a

10

little while. This testimony was consistent with the actions seen on the videotape.

In reaching his determination of permanent disability, Dr. Markbreiter examined petitioner, reviewed operative reports, performed range of motion and strength testing, palpated the hardware on both ankles, and observed the residual scars on the ankles and shoulder.

The compensation judge reached his conclusion of permanent disability after reviewing the extensive medical records, and the expert reports and testimony from Drs. Markbreiter and France. He found Dr. Markbreiter's testimony more persuasive based on his credentials and orthopedic experience as an ankle surgeon. We are satisfied the records and testimony presented sufficient objective medical evidence to support the judge's determination of a disability restricting the function of petitioner's ankles and shoulder. The judge's determination did not solely rest upon petitioner's subjective complaints.

We turn to the second Perez prong and consider whether petitioner established he suffered a "lessening to a material degree of his working ability . . . ." Id. at 118. It cannot be disputed that petitioner met the first component of the lessening criterion – that his injuries were "substantially greater than de minimis." N.J.S.A. 34:15-7.2; see Perez, 95 N.J. at 116. The injuries to his

ankles and shoulder were significant, requiring surgery and an extensive course of treatment.

Appellant contends that the video evidence demonstrates petitioner can perform the work duties he formerly did as a framer, and therefore he cannot satisfy the second component of the lessening criterion. Again, we disagree.

Petitioner testified that work as a framer required climbing stairs and ladders, carrying heavy material, setting up scaffolding, building walls, setting up beams, and general heavy physical labor. Because of his pain and limited range of motion, in addition to the lifting restrictions imposed by his treating physician, petitioner stated he could no longer perform the framing job.

Despite his limitations, however, petitioner began working as a handyman for homeowners – installing doors, painting, tiling, and similar work. Petitioner stated he can only work several hours each day before he is hampered by pain. His income as a handyman is substantially less than his pay as a framer. Therefore, with respect to the second component of the lessening criterion, it is clear "there has been an appreciable impairment of [petitioner's] ability to work." Perez, 95 N.J. at 117.

In considering petitioner's ability to work, the compensation judge discussed the testimony of petitioner and Dr. Markbreiter that petitioner could

not return to work as a framer but was working as a handyman, albeit for considerably less pay. The judge noted petitioner's inability to engage in recreational activities, his daily pain and the rest he required after extended periods of activity. We are satisfied the judge properly evaluated petitioner's functional working ability in his assessment of permanent partial disability.

In light of our stated reasons, we discern no reason to disturb the compensation judge's determination of permanent disability. The judge properly weighed "the testimony of competing medical experts and apprais[ed] the validity of [the] compensation claim[s]." Ramos v. M & F Fashions, 154 N.J. 583, 598 (1998) (citing Lewicki v. N.J. Art Foundry, 88 N.J. 75, 89 (1981) (recognizing the deference entitled to compensation courts due to their expertise)).

In his evaluation of the opinions of competing doctors, the compensation judge "carefully explained why he considered certain medical conclusions more persuasive . . . ." Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000). As we have stated, affording "more weight to the opinion of one physician as opposed to the other provides no reason to reverse [a] judgment." Ibid. The judge also made credibility findings of the witnesses.

13

We are satisfied the record demonstrates sufficient credible evidence supporting the finding of permanent partial disability.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION