GEORGE EVERHART, PROSECUTOR, v. NEWARK CLEAN-
ING AND DYEING COMPANY, DEFENDANT.

Argued January 19, 1938—Decided July 11. 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Charles M. Grosman.*

For the defendant, *Franklin J. Marryott.*

The opinion of the court was delivered by

HEHER, J. The present controversy relates to the *quantum* of permanent disability consequent upon prosecutor's conceded disfigurement as such, suffered by accident arising out of and in the course of his employment. *Pamph. L.* 1911, *pp.* 134, 763; *Rev. Stat.* 1937, 34:15-1, *et seq.* The cause has been remanded for determination of the question by this court in the exercise of its fact-finding authority. 119 *N. J. L.* 108.

The compensation bureau appraised this particular incapacity at thirty per cent. of total. Deputy Commissioner Stahl found it to be "a very serious disfigurement," and that prosecutor's "employment in general is seriously affected and reduced at least * * * from thirty to fifty per cent."

The Essex Common Pleas estimated the ensuing disability at ten per cent. of total. 14 *N. J. Mis. R.* 270. The judge found the scars "to be lengthy, lumpy and repellant," but he concluded that, inasmuch as "a separate award" had "already been made for the functional effect of such disfigurement, and that the highest award previously made by the courts of this state, for disfigurement *per se,*" had been fifteen per cent., the allowance in the instant case should be reduced to ten per cent. of total. And counsel for the defendant employer argues that "an award of ten per cent. is not only supported by various adjudications (in other jurisdictions), but will fix a reasonable and logical standard, even though that standard is arbitrarily arrived at, for other courts to follow."

But to permit awards in other cases to serve as the basis for an arbitrary maximum would plainly frustrate the spirit and policy of the compensation statute. That would constitute a judicial usurpation of the legislative function. It is a mere truism to say that the courts are under a duty to apply the standard laid down in the statute, *i. e.,* the actual disability ensuing from the particular compensable injury.

Turning now to the proofs, the physicians, as is so often the case, differed sharply in gauging the incapacity flowing from this conceded permanent injury. One of prosecutor's medical witnesses, inquiring "who is going to hire him?" fixed his disability at seventy-five per cent. Another physician called by him termed his appearance "hideous." He said that the facial keloids "are so monstrous" as to render it "very difficult" for him to find employment. He continued: "It is more than the ordinary scarring that you see, and the impression that a layman would get from such a condition would be, he probably would have some terrible skin disease or something of that sort, and I say the nearest thing I have seen that looks like it from that standpoint is a healed leprosy. * * * I think it is great enough and hideous enough and deforming enough to hinder his chances of getting employment such as he may have been able to get before he got this disfigurement." The employer's medical witnesses estimated the disability at ten per cent. of total. Yet it is conceded that the disfigurement is of such a degree as to permanently

incapacitate him from the pursuit of employments requiring "contact with the general public." It was so stipulated in the bureau.

Disability in the statutory sense is rarely, if ever, susceptible of precise admeasurement. Of course, the medical testimony is not conclusive. In a case such as this, the question is one peculiarly for the experienced judgment of the determinator of the facts, who is of necessity guided largely by his own observation of the disfigured employe. Under all the circumstances, we feel constrained to adopt the estimate made by the deputy commissioner as one calculated to subserve the essential statutory policy as expounded by our court of last resort in the case under review. 119 *N. J. L.* 108. Disfigurement that unfits the victim for "contact with the general public" is grievous indeed. Considering the policy of the statute to compensate for the loss ensuing "from personal injury which detracts from the 'former efficiency' of the workman's 'body or its members in the ordinary pursuits of life,' " in relation to the field of service to which prosecutor is suited, we regard the judgment of the bureau as unassailable.

The judgment of the Essex Common Pleas is accordingly reversed, and the judgment of the compensation bureau affirmed, with costs.