NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

SYLVESTRO CANDITO, PETITIONER, v. FAIRMONT CON-
STRUCTION & NICHOLSON ENGINEERING CO., LIB-
ERTY MUTUAL INSURANCE CO., RESPONDENT.

Decided July 22, 1941.

For the petitioner, *David Roskein.*

For the respondent, *John W. Taylor.*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The record in this court and the stipulation of counsel discloses that a determination of facts and rule for judgment was entered on June 17th, 1938, wherein it was determined and adjudicated that the petitioner suffered an accident arising out of and in the course of his employment with the respondent on December 18th, 1935, and for the ensuing disability was awarded temporary compensation for 20% of partial permanent total disability at the compensation rate of $20 a week.

The petitioner presently alleges that his disability has increased and progressed beyond the 20% of total found to

exist at the last adjudication and that he is now suffering from a disability which is total in character and permanent in quality. The respondent's medical experts conceded that the petitioner's disability has increased since the last adjudication but contend that he is not totally and permanently disabled. Thus the issues to be determined are (1) whether or not there has been an increase in the petitioner's disability since the adjudication of June 17th, 1938, and (2) if so, the extent of the petitioner's present permanent disability as a result of the said accident.

In resolving the conflict thus presented by the evidence I have had an opportunity of not only hearing the testimony of the petitioner and his various witnesses, but have also observed them, particularly the petitioner, while in court during the several days that this case was tried before me.

A brief recital of the facts and circumstances disclosed by the evidence and the record is not amiss. The petitioner, whose apparent good health and capacity for laborious work prior to the accident in question is uncontroverted, was employed on December 19th, 1935, by the respondent in the performance of certain work on a tower about 75 feet high. A fellow workman who was stationed about 30 feet above him dropped a cement block, part of which block broke off and struck the petitioner on the left shoulder, while another portion grazed his head. He was at once sent to the respondent's office and then referred to a doctor for first aid. The injuries which he thus suffered thereafter necessitated a continuous course of medical treatment by numerous physicians both in New Jersey and elsewhere including a Dr. Cotton of Boston, Massachusetts. From the date of that accident to the present time, the petitioner has been unable to resume his usual work or pursue any gainful occupation. There appears to be no serious medical dispute that in addition to the orthopedic injury, the petitioner also suffered a traumatic neurosis by reason of this accident.

On behalf of the petitioner the medical testimony of Doctors Max Kummel, Lewis Loeser and C. C. Beling was adduced. Both Dr. Kummel and Dr. Loeser had occasion to treat the petitioner for the injuries and their sequela which

he suffered in the aforesaid accident. By reason thereof these physicians were in a position to make comparisons between the physical condition of the petitioner both prior and subsequent to the last adjudication. They were of the opinion that his disability as a whole had markedly increased and while the injury to the petitioner's left shoulder had shown some improvement from an orthopedic standpoint, it was very evident, that the post traumatic psychoneurosis had progressively become worse and was accompanied by a decided increase in the various symptoms. It was the opinion of the petitioner's doctors that he is now totally and permanently disabled.

On behalf of the respondent there testified Dr. Jack Blumberg and Dr. Ambrose Dowd, neurologists, who examined the petitioner on numerous occasions. They, too, had seen the injured employe both before and after the last adjudication and their comparative findings disclosed that there was an increase in the petitioner's disability. They conceded that he was suffering from a marked psychoneurosis of a hysterical conversion type and that the psychiatric disability had increased since the last hearing. However, they were of the opinion that his permanent disability at present does not exceed 60% to 65% of partial permanent total. In reaching this conclusion, the respondent's experts theorize that the petitioner could perform some light work of a sedentary character such as for example a time-keeper or other work which requires little, if any, real physical energy.

Thus the issue which I am called upon to determine resolves itself into a question of whether I am to be governed by theoretical possibilities as to what the petitioner might or could do in the pursuit of some gainful work or whether a more practical rule should prevail. Viewing the petitioner as I have on the several days that this case had been before me, both on the witness stand and in the court room, it is inconceivable that a person having his appearance, his facial expression, his mannerisms, his unusual expression while speaking, and his lack of full control of his bodily motion is capable of employment anywhere.

In passing it is well to observe that there is no doubt in

my mind that these symptoms and mannerisms are honest and
*bona fide,* nor do I entertain any doubt that the symptoms
which he manifests are of a severe hysteria or psychoneurosis.

It is true that while his external physical appearance and
demeanor is not the absolute test of the existing disability,
this factor is to be considered in arriving at a determination
of his disability within the meaning of the Workmen's Compensation Act, particularly in the light of his undoubted
inability to sell his labor in the open market by reason of
his repelling external demeanor, appearance and conduct.
*Eberhardt* v. *Newark Cleaning and Dyeing Co.,* 120 *N. J. L.*
474; 200 *Atl. Rep.* 759.

Irrespective of the repulsive feeling one experiences in the
immediate presence of the petitioner, and considering him
as a psychologic unit, keeping in mind the nature of his
orthopedic disability, and what is vitally more important his
mental and neurotic condition, I am constrained to accept a
practical conception of what constitutes total disability within
the meaning of the act. This man as I have observed him,
is useless to himself and to society as he is now physically and
mentally constituted. I cannot conceive of any normal pursuit in life that he is capable of performing in a practical and
systematic manner. In my opinion any man who cannot
pick up an ordinary household utensil and retain same in
his grasp properly in the performance of a relatively minor
activity, does not possess the requisite physical qualifications
to engage in the normal activities of life. I am thus constrained to arrive at no other conclusion than that he is
presently permanently and totally disabled.

While we may theorize with respect to what work, if any,
this man possibly could perform, a more practical and persuasive approach to this question is consideration of the hard
and seemingly relentless factors which one encounters in
everyday life. The thought that rehabilitation might be of
some avail and that the petitioner may be restored to some
degree of normalcy by reason of rehabilitation and re-education is commendable. However, that eventuality is problematical and with which, for the moment, we cannot be
concerned. The findings of disability must be as they existed

at the time of the hearing. The bureau must deal with the situation as then presented. *Simpson* v. *New Jersey Stone and Tile Co.*, 93 *N. J. L.* 250; 107 *Atl. Rep.* 36. Nor can any weight be given to the suggestion that the petitioner might perform some work at some undetermined time in the future. It is for this court to determine what compensation is due to petitioner by reason of his *existing* disability. I can only be guided by the facts before me, and not by uncertain possibilities in the future. The only proper course is to deal with the case exactly as it stands at the time of the hearing. *Feldman* v. *Braunstein*, 87 *N. J. L.* 20; 93 *Atl. Rep.* 679.

The medical experts of both sides have conceded that there has been an increase in the petitioner's disability since the last adjudication. I am of the opinion that the testimony and surrounding circumstances are not only pursuasive but compelling of the conclusion that he is totally and permanently disabled. In reaching this conclusion I cannot place much weight upon the contention of the respondent that the man is theoretically employable. The evidence is barren of even a suggestion that the petitioner is familiar with the type of clerical or sedentary work which the respondent's physician suggests he may be able to perform. Nor has there been any showing that he has engaged or attempted to engage in that type of work. I feel that the respondent has wholly failed to carry the burden of proving this contention. *Atchinson* v. *Colgate*, 120 *N. J. L.* 425; 131 *Atl. Rep.* 921.

Accordingly I find and determine that the petitioner has met the burden of proving that his disability, resulting from the admitted compensable accident of December 18th, 1935, has increased since the last adjudication and that he is now totally and permanently disabled. The jurisdictional facts in this case are undisputed.

\*        \*·        \*        \*        \*        \*        \*

HARRY S. MEDINETS,
*Deputy Commissioner.*