82 N.J. Super. 100 (1963)
196 A.2d 695
JAMES L. WRIGHT, PETITIONER-RESPONDENT,
v.
PUREPAC CORP., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided December 30, 1963.
*102 Mr. Joseph D. Haggerty for respondent-appellant (Mr. John W. Taylor, attorney).
Mr. Louis Lebowitz, for petitioner-respondent.
WEIDENBURNER, J.C.C.
A judgment of the Division of Workmen's Compensation awarded petitioner 35% partial permanent disability of the right leg and 4% partial permanent neurological disability. Respondent appeals only from that part of the judgment which awarded petitioner the said degree of the right leg, contending that (1) the judge of compensation departed from the controlling standards in this *103 State when he employed a normally concealed, non-disabling disfigurement of the injured employee as a factor in fixing the amount of the award, and (2) the award is excessive and against the weight of the evidence.
Petitioner sustained a compensable injury when a stream of water from a hose he was using in cleaning the inside of a boiler came in contact with hot ashes and the resulting steam caused first, second and third degree burns on his right leg. The burns on petitioner's leg left permanent scars from the dorsum of the right foot to the gluteal area.
The medical experts for both parties found varying degrees of disability of the right leg. Dr. Jacob Heyman, who testified for petitioner, estimated the disability as 30%. Dr. Nelson Manowitz, who testified on behalf of respondent, estimated the disability to be 4 to 5%. The treating physician, Dr. David Reilly, testified on behalf of respondent and fixed the disability at approximately 5%.
The judge of compensation viewed the injured leg and marked the petitioner in evidence. He found that the evidence was insufficient to establish that petitioner's employability had been affected by the injuries sustained in the accident, but made an award of 35% of partial permanent disability of the right leg, which was 5% greater than the highest estimate of any of the expert medical witnesses. This appeal by respondent followed.
It is contended that the criterion for determining permanent disability in New Jersey is "whether the worker has lost any physical function detracting from his body's efficiency in the ordinary pursuits of life," Heidel v. Wallace & Tiernan, Inc., 37 N.J. Super. 522, 528 (Cty. Ct. 1955), affirmed per curiam 21 N.J. 335 (1956), and, in disfigurement cases, whether the disfigurement is visible and may, therefore, be presumed to interfere with the injured worker's ability to obtain employment. Implicit in the argument advanced is the thesis that compensation cannot be awarded for a normally concealed disfigurement unless there is affirmative proof of interference with future earning capacity.
*104 Respondent quotes extensively from Professor Larson's treatise, The Law of Workmen's Compensation, in an effort to buttress his argument on this point. A careful reading and analysis of the cited text, however, discloses that respondent's reliance thereon is mistaken.
Thirty of our sister states have made statutory provision for compensation for disfigurement of injured employees, but the New Jersey statute is silent on the subject. See 2 Larson, supra, § 65.30, p. 138 (footnote), for a list of jurisdictions having such statutes. The statutes in these states vary widely in content and scope, but generally authorize awards for such disfigurement as is disabling or visible and which, therefore, may be presumed to affect the injured worker's earning capacity or employability. Ibid., pp. 138-139.
The historical basis of compensation laws as the socially desirable compensation of the injured employee for a lessening of his earning capacity from the work-connected accident is carefully documented and approved. 1 Larson, supra, § 2.40 to § 3.40, pp. 9-22. There is criticism of some decisions which appear to include elements of damage appropriate only in civil actions for negligence in awards of compensation, rather than measure the award by the earning capacity principle inherent in the compensation statutes. 2 Larson, supra, § 65.30, pp. 139-140. Refutation of respondent's argument here that there must be proof of interference with petitioner's future earning capacity is found in the analysis of decisions in other jurisdictions which have statutes authorizing compensation for disfigurement. At 2 Larson, supra, § 58.32, pp. 50-51, it is said:
"Some of these cases use as a beginning point the perfectly correct statement that compensability in disfigurement cases does not depend on proof of impairment of earning capacity. They are apt, however, to overlook two important things affecting the precise meaning of the statement. The first is that it refers to present earning capacity as evidenced by present earnings. The statement is almost invariably drawn from cases holding that proof of current earnings does not defeat schedule or disfigurement awards. The statement does not mean, as a careful reading of the cases from New York Central Railroad Company v. Bianc [250 U.S. 596, 40 S.Ct. 44, 63 L.Ed. 1161 *105 (1919)] on down will show, that the presumed ultimate long term impairment of claimant's ability to earn has become immaterial. The second point to note is that the statement refers only to what must be proved. Damage to earning capacity need not be proved in such cases  true; but the reason is not its irrelevance but the fact that it is conclusively presumed.
So deep-rooted then, is the earning-capacity principle in compensation law, that, even under statutes defining disfigurement broadly as any loss of or injury to a member otherwise not compensated for, the statute should not be read as extending to injuries which cannot be presumed to affect earning capacity at any time in the future." (Footnotes omitted)
See also Amalgamated Sugar Company v. Industrial Commission, 75 Utah 556, 286 P. 959 (Sup. Ct. 1930), where the court said:
"In most cases any disfigurement or loss of bodily function ultimately impairs earning capacity."
Finally, the validity of awards for disfigurement which can be presumed to affect earning capacity at any time in the future is recognized. In 2 Larson, supra, § 58.31, pp. 48-49, it is said:
"Apart from * * * special statutory restrictions, then, there is no reason why loss of use and disfigurement of the same member cannot both be recognized. Interference with presumed future earning capacity, which is the justification for a disfigurement award, may or may not accompany a schedule loss; there is no reason to suppose that any allowance was made for it in the original schedules, since they were calculated on loss of function, in many instances at a time when disfigurement had not yet been recognized as having a place in workmen's compensation. If such interference does accompany the schedule loss, it is appropriate to make allowance for it." (Footnotes omitted)
Although the text comments were made concerning decisions in jurisdictions having statutory provisions for compensation of disfigured employees, they are equally pertinent and cogent here. Our courts have construed the statute in this jurisdiction as authorizing awards of compensation for disfigurement despite the absence of specific legislative authority for it.
*106 An award for disfigurement in New Jersey may be justified only under N.J.S.A. 34:15-12(c) (22), which authorizes compensation "[i]n all lesser or other cases involving permanent loss." This section of the statute received specific attention in Coates v. Warren Hotel, 18 N.J. Misc. 363, 366, 13 A.2d 787, 789 (C.P. 1940), where the court stated:
"The purpose of the Workmen's Compensation Act is to provide compensation for personal injuries out of and in the course of employment, and after setting forth schedules of compensation for temporary and permanent disability, it provides `in all lesser and other cases involving permanent loss' proportionate compensation shall be made. Therefore, in the ascertainment of the amount of compensatory disability suffered by an injured employee, allowance for disfigurement in addition to the strictly functional loss ensuing from the injury is within both the letter and spirit of the Statute."
It has been held that a non-disabling disfigurement of a part of the body which is visible while the worker is engaged in the ordinary pursuits of life is compensable. Everhart v. Newark Cleaning & Dyeing Co., 120 N.J.L. 474, 476 (Sup. Ct. 1938); Dent v. Butterworth-Judson Corp., 97 N.J.L. 322 (E. & A. 1922). Interference with presumed future earning capacity has been advanced as the consideration to be employed in determining whether an award should be made for disfigurement.
In Clooney v. Crescent Glass Specialty Co., 37 N.J.L.J. 82 (C.P. 1913), the court denied compensation for disfigurement consisting of small scars on petitioner's temple and jaw because it found that his power to do work had not been lessened and the proofs failed to establish that the injury interfered with his ability to obtain employment. The court interpreted the statute as follows:
"The act does not provide compensation for mere disfigurement; but where the disfigurement leaves a man in such a condition that he cannot get work at his former employment, or some similar employment, it would seem to present a case which comes within the act; any other view would leave the workman without compensation for the direct consequence of an injury. The question has not been *107 passed on by our courts, but the English statute, which on this point is substantially similar to ours, has recently been before the House of Lords, and Lord Loredorn, in Ball v. William Hunt's Sons (1912 A.C. 496) lays down the principle that there is incapacity for work when a man has a physical defect which makes his labor unsaleable in any market reasonably accessible to him, and there is partial incapacity for work when such a defect makes his labor saleable for less than it would otherwise fetch. The ruling purpose of the act is apparently to compensate for disability to earn wages in the employment in which the injured workman was engaged at the time of the accident, or some similar employment." (at pp. 83-84)
Compensation was awarded for disfigurement in Ecedi v. Corn Products Refining Co., 40 N.J.L.J. 265, 267 (C.P. 1917), where the court held that the injured employee was entitled to recover under the statute "where it appears that there is a disfigurement of such a character as to preclude or seriously interfere with the procurement of employment by the employee."
In Schalkoff v. Clemco, Inc., 17 N.J. Misc. 97, 100, 5 A.2d 62, 64 (Dept. Labor 1939), the deputy commissioner refused to allow permanent disability for two scars on the neck of a female petitioner who was customarily engaged in factory work, stating:
"I do not believe the scars on her neck constitute a physical defect which makes her labor unsaleable in any market reasonably accessible to her as a factory worker or as such, renders her labor saleable for less than it would otherwise fetch. Were the petitioner engaged in the theatrical field, I could very readily see how the same would hinder her in securing employment."
See also 2 Larson, supra, § 58.31, pp. 48-49.
The liberal interpretation to be accorded our statute is exemplified by the language of the court in Heidel v. Wallace & Tiernan, Inc., supra, where it was said:
"* * *, the theory in New Jersey as to awards for permanent disability is not based upon the interpretation of the word `disability' in its narrow sense indicating the impairment of working or earning capacity. It is based rather upon a broad interpretation connoting the loss of any physical function or any impairment to the worker as a physiological unit. In fact, it appears that the New Jersey theory *108 is comparable to that found in the present English Act." (37 N.J. Super., at p. 528, emphasis supplied)
The theory under the present English act is to disregard the loss of actual or potential wage-earning capacity and to make awards based upon "all disabilities (whether or not involving loss of earning power or additional expense) to which the claimant may be expected * * * to be subject * * * as compared with a person of the same age and sex whose physical and mental condition is normal." Ibid., pp. 527-8.
While our courts have not had prior occasion to speak on the precise problem here presented, the more enlightened and modern view has been expressed by an appellate court of a neighboring state. In Bethlehem Steel Company v. Wilson, 210 Md. 568, 124 A.2d 249 (Ct. App. 1956) the employer appealed from awards for scars on the thigh and lower leg of petitioners and contended that the Maryland statute neither contemplated nor authorized an award for "non-disabling disfigurement to a part of the body normally covered by clothing." (124 A.2d, at p. 250.) Affirming the awards below, the court said:
"We have considered the obvious  that the area of the body normally covered by clothing has shrunk drastically as the years have passed. Shorts are standard and frequent attire for both men and women. Abbreviated bathing suits are the rule for both sexes. Many a vaccination mark, caused to be placed upon her daughter by a careful mother so as to nestle forever unseen in the shadow, now regularly faces the sunlight of public view, unadorned but unabashed. Recreation and sport programs for employees are a part of the routine of many employers. Men and women use their respective company locker rooms and shower rooms and so expose normally covered infirmities to fellow employees. Physical examinations, as a prerequisite to employment, are very often required. Such examinations would reveal any disfigurements not normally exposed to view. We think it difficult, if not impossible, to draw a line between the legislatively presumed effect on earning capacity of, say, a scar on the wrist, and the same scar between the knee and the hip or below the knee. Since the Legislature has not seen fit specifically to designate as compensable only disfigurement of certain designated areas, although many other legislatures have, but rather has left the determination of disfigurement in each case to the Commission, we refuse to imply any such restriction from the legislative words." (124 A.2d., at p. 252).
*109 This court can perceive no distinction between a normally visible, non-disabling disfigurement and one which is normally concealed, non-disabling, but of such nature and extent that it would be revealed by the customary, pre-employment physical examination. Both types possess the inherent capacity to impair future earning capacity. Where a disfigurement of an injured employee results from or accompanies injury arising out of and in the course of employment it is compensable when the disfigurement is of such a nature and extent that it may reasonably be presumed to impair or interfere with the future earning capacity or employability of the employee.
The insufficiency of affirmative evidence to establish that petitioner's present earning capacity or employability has been affected by his disfigurement is immaterial under this court's interpretation of the law. 2 Larson, supra, § 58.32, pp. 50-51; Amalgamated Sugar Company v. Industrial Commission, supra. It is sufficient if the evidence, including the observation of the disfigured employee by the trier of the facts, establishes the reasonable probability that the disfigurement will impair earning capacity or employability in the future. The question in each case is one for the experienced judgment of the trier of the facts. Everhart v. Newark Cleaning & Dyeing Co., supra, 120 N.J.L., at p. 476; Lightner v. Cohn, 76 N.J. Super. 461, 466 (App. Div. 1962), certification denied 38 N.J. 611 (1962).
It is the considered judgment of this reviewing court that the total consideration of the evidence, which includes observation of the petitioner, justifies the determination that the disfigurement suffered by the petitioner is of such a nature and extent that it may reasonably be presumed that it will impair or interfere with his future earning capacity or employability.
Respondent's argument that the compensation award is excessive and against the weight of the evidence because it exceeds the estimates of all of the expert witnesses is frivolous. This court has been instructed that every intendment is in *110 favor of the judgment under review, and the lower court's findings of fact should not be disturbed unless the reviewing court is well satisfied that the finding is a mistaken one. I v. D, 60 N.J. Super. 211, 218 (App. Div. 1960), and cases there cited. The responsibility for a thorough review and an independent determination of the facts and the law continues, however, to rest upon the reviewing court. Russo v. United States Trucking Corp., 26 N.J. 430 (1958). In the cited case the function and duty of an appellate court is stated in the following language:
"From a study of the entire record it is the function and duty of the reviewing court to make a determination according to its considered judgment, and in doing so it is mandatory only to give due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses. A finding of fact in the Division * * * does not lessen the duty of the appeal court to determine the facts and evaluate them by full investigation and analysis of the evidence so as to adjudge whether the general finding is consistent therewith, i.e., if upon such total consideration of the record and views expressed below, it is believed the judgment both in fact and the applicable law from which appeal is taken is correct, it should be affirmed; if the judgment is erroneous, it should be reversed or modified." (at p. 435)
In addition, the rules remind us that, upon review, due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. R.R. 4:53-1.
An award of compensation which is greater than the medical estimates of disability is not ipso facto or ipso jure excessive so that appellate intervention is necessary. The determination of this factual issue in such a manner is well within the province of the trier of the facts. In Everhart v. Newark Cleaning & Dyeing Co., supra, 120 N.J.L., at p. 476, the court said:
"Disability in the statutory sense is rarely, if ever, susceptible of precise admeasurement. Of course, the medical testimony is not conclusive. In a case such as this, the question is one peculiarly for the experienced judgment of the determinator of the facts, who is of necessity guided largely by his own observation of the disfigured employee."
*111 Our courts have held that neither the judiciary nor fact-finding bodies are bound by conclusional opinions of expert witnesses. Lightner v. Cohn, supra; Sarvent v. Federal Shipbuilding & Dry Dock Co., 7 N.J. Super. 94, 96 (App. Div. 1950); Harrison v. Garlitti, 120 N.J.L. 64 (Sup. Ct. 1938).
In Lightner v. Cohn, supra, 76 N.J. Super., at pp. 465-466, the court said:
"Similarly meritless is the ratiocination that an award of 100% disablement is ipso facto excessive where a majority of the medical witnesses estimated that petitioner's incapacity was not in excess of 25% of total. The judiciary is not bound by the conclusional opinions of any one or more, or all of the medical experts. The quantum of an employee's disability is not determinable according to any precise formula, mathematical rule or scientific admeasurement. Medical testimony is not conclusive. Everhart v. Newark Cleaning & Dyeing Co., 120 N.J.L. 474, 476 (Sup. Ct. 1938). The question in a case involving disfigurement is one `peculiarly for the experienced judgment of the determinator of the facts, who is of necessity guided largely by his own observation [of the disfigured employee].'"
See also, to the same effect, Harrison v. Garlitti, supra, 120 N.J.L., at p. 67.
It is apparent from the testimony that the injury sustained by petitioner in terms of the degree of loss of functional use of the leg was minor, and that a substantial portion of the award was based on the extensive disfigurement of the leg by scarring. Applying the rule previously stated, and giving due regard to the opportunity of the court below to judge of the credibility of the medical witnesses, however, does not impel this court to the conclusion that the finding below was a mistaken one.
There was ample cause to give little weight to the testimony of the treating physician, who obviously sought to minimize the extent of the disfigurement of petitioner's leg. The judge of compensation appraised the testimony of the treating physician as being "heavily weighted with a tendency to down-grade the seriousness of the petitioner's injury." This physician *112 testified anomalously that "there is not real scarring," but stated "there are areas of skin which have no pigmentation. They are depigmentized." When asked how much of the petitioner's leg was actually scarred, this witness said, "a very small area. It is about as big as two fingers." He then estimated the area without pigmentation as approximately 4 by 6 inches.
Respondent's orthopedic expert contradicted the treating physician's description by stating that the petitioner's leg had "a lot of scarring." He also testified that "there is extensive scarring. There is extensive subcutaneous fixation secondary to second and third degree burns. There is some joint involvement. Hyperesthesia will be a typical effect of nerve damage." The judge of compensation appraised the description of petitioner's leg by respondent's orthopedic expert as "eminently fair" and disagreed only with that expert's estimate of disability.
The testimony of petitioner's orthopedic expert emphasized the depreciative testimony of the treating physician. This expert stated that "there is extensive scarring in the right hip and entire lower extremity." He also noted "an extensive area of pigmented burned scars * * * involving the greater portion of the right foreleg, particularly over its lateral aspect and sparing a portion of the inner aspect. There is similar scarring involving the lateral and posterior aspect of the thigh. In the thigh area, the scarring extends up to the greater trochanter and into the gluteal region."
As a result of the petitioner's being marked in evidence, this court also had the opportunity to view the scarred limb. This visual examination confirmed the descriptions of petitioner's leg by the orthopedic experts for both parties, as well as the validity of the award made by the court below for the injury to petitioner's leg.
The judgment entered in the Division of Workmen's Compensation is, accordingly,
Affirmed.