**NOT FOR PUBLICATION WITHOUT APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



**MARY SIOBHAN BRENNAN**
JUDGE

210 South Broad Street, Fifth Floor
Trenton, New Jersey 08608
609 815-2922, Ext. 54560
Fax: 609 815-3079

October 29, 2020

Archer & Greiner, P.C.
Alex Paul Genato, Esquire
101 Carnegie Center, Suite 101
Princeton, New Jersey 08540

Palumbo Renaud & DeAppolonio LLC
Robert F. Renaud, Esquire
190 North Avenue E (Rte. 28)
Cranford, New Jersey 07016

Via ECourts

RE:     HPT TA Properties Trust F.K.A. Travelcenters Properties, LP v. Bloomsbury
        Borough
        Docket Nos. 008898-2014, 002900-2015, 001751-2016, 004400-2017

Dear Mr. Genato and Mr. Renaud:

This constitutes the court's reconsideration of the evidence, and more detailed explanation of conclusion of value opinion, on remand from the Superior Court, Appellate Division. Furthermore, this letter supplements and amplifies the court's earlier unpublished decision of September 28, 2018.

The property at issue is a travel center/truck stop identified as Block 30 Lot 3 on the Borough's tax map (subject property). Travel center/truck stop properties are essentially multi-purpose facilities that were designed to service commercial truck traffic and drivers. Over the years they have expanded to include amenities that both truck drivers and people traveling long distances can take advantage of such as restaurants, convenience stores, and rest rooms. The truck drivers need special amenities because they are often on the road for days or weeks at a time and






need places to do their laundry, take showers, and purchases necessities. There are also recreational activities in the travel centers such as arcades and even small movie theaters.

Critical to travel center/truck stops are facilities to service and repair trucks. Some have truck washes. All have separate pumping stations dispensing gasoline for vehicles and diesel for trucks and buses. Some now have chargers for electric powered vehicles. This combination of uses and services in one location is typically operated in part or in whole by the owner of the property.

Since multiple businesses are operated on site, there is an intermingling of business value and real property value that is divided into tangible property and intangible property. On the tangible side, there is real property (such as land, buildings, the canopy, etc.) and personal property (such as furniture, fixtures and equipment). Additionally, the inventory is stored on site to maintain sales of products within the complex.

On the intangible side, there are items typical of going concern: cash, a trained and skilled work force, contracts with certain trucking companies and other leases or contracts that facilitate operations within the travel center, and profit.

For the purpose of a tax appeal, the assets to be valued are the real property: the land and the buildings. There are generally three approaches in the valuation of real property: Cost, Income Capitalization, and Sales Comparison. The court has accepted both parties' expert appraiser's determination that this special use property can only be reliably appraised using the Cost Approach and not the Income Capitalization, or Sales Comparison Approaches.

The Cost Approach is comprised of an improvement value and a land value. Prior to trial, the parties agreed upon the improvement value for all four tax years at issue. The trial focused on the value of the land at its highest and best use as vacant. The court finds that the zoning in place

2

during the tax years at issue does not permit a truck stop/travel center, and concludes that the highest and best use of the subject property as vacant is development consistent with a truck stop or travel center but limited as permitted in the Borough's B-2 business district. The permitted uses were set forth at length in the court's earlier opinion.

Both parties' experts made their best efforts to find vacant land sales of properties purchased specifically for the purpose of developing a truck stop/travel center. Despite expansive and diligent searches within New Jersey[1], neither expert could locate even one such sale. Nor could the experts identify any vacant land sales immediately adjacent to a major transportation route interchange. This made the land value calculation complicated and challenging. Each expert had to establish other criteria to locate vacant land sales that had similar characteristics to the subject property, and which would require the least amount of adjustments. Although not closely comparable, and therefore not ideal, the land sales identified by each expert were chosen out of necessity. Neither expert claimed that the land component of the subject property could not be reasonably or reliably valued. Nor did cross-examination elicit sales more comparable than the ones chosen by the respective experts and their determined criteria.

Taxpayer's expert believed that the best barometer of land value in determining the value of the subject property was to find sites in Hunterdon County that lacked infrastructure, were close to the Interstate 78 corridor, and had zoning compatible with the subject property's B-2 business district zoning.

Borough's expert sought to locate comparable land sales with similar lot size, and which would have close access to major transportation routes such as the New Jersey Turnpike, Interstate

---

[1] Neither expert looked beyond New Jersey as they did not believe that out of state comparable sales would be reliable.

78, or Interstate 287. Borough's expert condensed his market to the area between Essex and Middlesex Counties because he believed that the economic characteristics for most municipalities in those areas were the same as the subject property.

The court accepts that although their separate criteria led them to different properties, locations, and ultimately divergent valuations, their efforts to find comparable vacant land sales were thorough and in conformance with real estate appraisal practices. In addition, the trial testimony of the assessor echoed the difficulty and challenges faced by the experts in determining the value of the subject property.

### 1. The Court's Review of Taxpayer's Expert's Valuation of Land

Taxpayer's expert prepared an appraisal report of the subject property and subsequently testified before this court, opining his determination of the land value. A state certified general appraiser in both Pennsylvania and New Jersey since 1993, his assignment was to determine the fair market value of the subject property as of October 1, 2013, 2014, 2015, and 2016. In this endeavor, he inspected the property on three occasions.

Taxpayer's expert selected eight land sales (**TLS#1 – 8**) occurring between June of 2010 and December of 2014. Taxpayer's expert considered the following aspects as significant to the overall comparability of the sale properties:

a) Property Rights: All sales were with full property rights (fee simple interest) and no adjustments were deemed required.

b) Financing: All sales were consummated with typical financing and/or cash. No adjustments were deemed required.

c) Conditions of Sale: The sales were verified for any abnormal conditions, motivational premiums, or discounts. TLS#6 was sold subject to bankruptcy of the owner and

4

adjusted upward to reflect atypical motivation on behalf of the seller. No other adjustments were deemed required.

d) Market Conditions: The land sales analyzed occurred between June of 2010 and December of 2014. Taxpayer's expert analyzed the local market area and he found that market conditions were level and no adjustments were deemed necessary.

e) Size: TLS's that are significantly smaller than 12.02 acres were generally adjusted downward, and significantly larger parcels were adjusted upward to reflect economies of scale.

f) Location: Adjustments were made for superior and inferior locations.

g) Approvals: None of the TLS have approvals and all were adjusted upward to reflect that condition.

h) Shape/Topography: A number of TLS have odd shapes/topography and negative physical features that make them somewhat inferior and upward adjustments were made when deemed appropriate.

i) Access/Visibility: Taxpayer's expert found that the visibility and access were comparable, and he deemed no adjustments necessary.

Upon analysis and review of his adjusted value ranges, and based upon his general observations regarding market conditions, it was Taxpayer's expert's opinion that the underlying value of the subject property was $60,000 per acre as of the October 1, 2013, 2014, 2015 and 2016 valuation dates.

**TLS#1** took place in June of 2010 in Readington Township, Hunterdon County. The site has a total of 6.73 acres and is located along U.S. Route 202 with additional frontage on Old York Road. Approximately 5 acres of the site is zoned Business while the remaining 1.73 acres is in the

Village Residential zone. The property is divided east to west by the Samuel Brook and there is associated flood plain and wetlands issues with approximately 1.2 acres of the site, not including buffers. A tributary to the Samuel Brook also traverses the southernly portion of the site. The westerly portion of the site has some moderate sloping as it rises from Samuel Brook. The commercially zoned portion of the land is generally at road grade with gentle slopes. Two to three acres of the site have generally average commercial utility with the remainder being either residentially zoned or environmentally challenged. There are two older low-quality structures on site that taxpayer's expert deemed not to be value contributory, although the purchaser intends to recondition them for use in a retail nursery/landscape business. The property has access to gas, electric, water and telephone. The property was on the market for approximately one and a half years and sold for $280,000 cash. The property at one time had been the subject of a site plan application for a motorcycle dealership, which was denied. Reflected unit values are $41,605 per acre and $.96 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, or access/visibility. He made an upward adjustment of 25% for approvals and a 10% adjustment for shape and topography. Adjusted values were $56,167 per acre and $1.29 per square foot of land.

The court gives no weight to **TLS#1** due to its time differential from the assessing date(s), the mixed zoning, the distance from Interstate 78, and the topographical differences due to wetlands and the brook.

**TLS#2** took place on January 14, 2011 in Clinton Township, Hunterdon County. The site has a total of 9.18 acres and has approximately 400 feet of frontage on Highway Route 22. The property is zoned as C-2 Commercial. The buyer paid $400,000 cash; however, it was under

contract for sale for some time while the buyer obtained approvals to utilize the property for new car auto storage in conjunction with a nearby Honda Dealership owned by the buyer. Reflected unit values are $43,573 per acre and $1.00 per square foot of land value.

The property is irregularly shaped and is primarily open farm fields. Poor condition/damaged improvements were present but removed after the purchase. The property is on a corner of an intersection controlled by a traffic control signal. It slopes downward from the highway and the slopes in the rear are steeper. The property has access to electric and telephone.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, or access/visibility. He made an upward adjustment of 25% for approvals and a 5% adjustment for shape and topography. Adjusted values were $56,645 per acre and $1.30 per square foot of land.

The court gives no weight to **TLS#2** due to its time differential from the assessing date(s), the distance from Interstate 78 or other major transportation routes, and the topographical differences.

**TLS#3** took place on February 29, 2012 in Clinton Township, Hunterdon County. The property is zoned ROM-1, Research, Office & Manufacturing and comprises 97.70 acres. It has an irregular shape with gently rolling hills. It has frontage on Route 31 and access to electric and telephone utilities. The site was purchased by the municipality for $3,775,000 for preservation purposes. Reflected unit values are $38,639 per acre and $.89 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, or access/visibility. He made an upward adjustment of 25% for approvals and a 5% adjustment for shape and topography. Adjusted values were $50,231 per acre and $1.15 per square foot of land.

The court gives no weight to **TLS#3** due to its time differential from the assessing date(s), the lot size, the zoning, and the topographical differences.

**TLS#4** took place on September 12, 2012 in Clinton Township, Hunterdon County. The property is located on Payne Road and is zoned RR-4, Rural residential. It is comprised of 10.21 acres and is an irregular shape with level to rolling topography. The site was purchased for subdivision and residential development. It is traversed by a number of easements including a conservation easement, an electric power easement, and the Transcontinental Gas Pipeline. The site was purchased for $450,000. Reflected unit values are $44,074 per acre and $1.01 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, or access/visibility. He made an upward adjustment of 25% for approvals and a 10% adjustment for shape and topography. Adjusted values were $59,500 per acre and $1.37 per square foot of land.

The court gives no weight to **TLS#4** due to its time differential from the assessing date(s), the distance from Interstate 78 or other major transportation routes, the zoning, the multiple easements, and the topographical differences.

**TLS#5** took place on September 14, 2012 in Raritan Township, Hunterdon County. The property is located on the corner of Barley Sheaf Road and US Route 202 and is zoned O-2 Office. It is comprised of 4 acres and had an old run down, unoccupied house which reportedly had no contributory value. The land rises from Route 202 in a southernly direction and the site is gently sloping and wooded. Available utilities are electric, water, sewer, and telephone, although a buyer would need to pay to hook up to the water and sewer. There are no wetlands on site.

8

The site was purchased for $145,000. Reflected unit values are $36,250 per acre and $1.83 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, shape/topography, or access/visibility. He made an upward adjustment of 25% for approvals. Adjusted values were $45,313 per acre and $1.04 per square foot of land.

The court accepts this sale as comparable due to its location, zoning, lot size, and utilities. The court finds an additional 10% positive adjustment is required as the subject property is in a superior location due to its proximity to the Interstate 78 interchange. (The Borough's expert utilized a 10% adjustment for a superior location, which this court adopts in the context of an interchange property) The weight to be given to this sale is impacted by its difficult access, the physical distance from Interstate 78 or other major transportation routes, and the topographical differences.

**TLS#6** took place on July 18, 2013 in Clinton Township, Hunterdon County. The property is located on Route 22 and is zoned C-2 Commercial. It is comprised of 14.70 acres and is an irregular shape with rolling topography. The site was part of a property in Bankruptcy at the time of sale. The property was sold separately but in conjunction with the HK Buzby & Sons building supply business properties on Main Street in Clinton Township. It has access to electric and telephone utilities. The site was purchased for $710,000. Reflected unit values are $48,299 per acre and $1.11 per square foot of land value. The sale was verified although the expert did not ascertain if there was an appraisal of the property. Taxpayer's expert made no adjustments for financing, market conditions, size, location, shape/topography, or access/visibility. He made an upward adjustment of 25% for approvals and a 10% upward adjustment for the conditions of sale (bankruptcy). Adjusted values were $66,411 per acre and $1.52 per square foot of land.

The court finds this property most comparable to the subject property and takes note that it reflects the most value as compared to the other sales. Counsel for the municipality vehemently argues that no sales in bankruptcy should ever be considered for purpose of property valuation, and in support references multiple cases by other judges, which he urges this court to follow. However, contrary to this proposition, the cases submitted by Borough's counsel demonstrate that in certain situations appraisers do utilize such sales in their analysis when attempting to determine value. Bankruptcy sales are approved by bankruptcy judges and can, depending on the circumstances, be reflective of true market value. Properties in bankruptcy may have been listed for sale or under contract for sale prior to the filing of bankruptcy, and their purchase price may be market and not influenced by the bankruptcy proceedings. If not market value, there is often sufficient information available from which an appraiser can make a necessary and reliable adjustment. It is the job and responsibility of the court to conduct an individual review of the sale and its merits to determine whether it can be considered comparable and what weight the sale should be given.

In this instance, **TLS#6** is the property that is most similar to the subject property, out of all the taxpayer's expert's comparable sales. That is what makes it attractive to this court. However, the court on reconsideration will exclude this sale, as taxpayer's expert did not do enough research and verification to substantiate his use of the sale and his 10% adjustment.

**TLS#7** took place on August 14, 2014 in Clinton Township, Hunterdon County. The property is located at the corner of Route 31 and Valley Brook Road. It contains 40 acres and is zoned ROM Research, Office & Manufacturing. The parcel is primarily open farm field and is traversed by the Cramer's Brook. There are no wetlands documented. It has access to electric and

telephone utilities. The site was purchased for $1,600,000. Reflected unit values are $40,000 per acre and $.92 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, shape/topography, or access/visibility. He made an upward adjustment of 25% for approvals. Adjusted values were $54,000 per acre and $1.24 per square foot of land.

The court accepts this sale as comparable due to its location, zoning, and utilities. The court finds an additional 10% positive adjustment is required as the subject property is in a superior location due to its proximity to the Interstate 78 interchange. (The Borough's expert utilized a 10% adjustment for a superior location, which this court adopts in the context of an interchange property) The weight to be given to this sale is impacted by its difficult access, the physical distance from Interstate 78 or other major transportation routes, and the brook and topographical differences.

**TLS#8** took place on December 31, 2014, and the property is in Clinton Township, Hunterdon County. The 5-acre property fronts Route 31 and the Spruce Run Reservoir. It is zoned OB-1, Office Business. The property has been on the market numerous times over the years and most recently it was on for 840 days and then 628 days since a price reduction. The property is wooded and slopes downward toward the reservoir. The surrounding area is not highly developed. There are several homes on Echo Lane and the purchaser was the son of an adjacent property owner who did not want the property developed. Available utilities are electric and telephone.

The site was purchased for $95,000. Reflected unit values are $19,000 per acre and $.89 per square foot of land value.

Taxpayer's expert made no adjustments for financing, conditions of sale, market conditions, size, location, shape/topography, or access/visibility. He made an upward adjustment of 25% for approvals. Adjusted values were $66,411 per acre and $1.52 per square foot of land.

The court gives no weight to **TLS#8** due to its location by the reservoir and residential area, as well as the topographical differences.

2. **The Court's Review of Borough's Expert's Valuation of Land**

Borough's expert prepared an appraisal report of the subject property and subsequently testified at length before this court, opining his determination of the land value. A state certified general appraiser and tax assessor since 1983, his assignment was to determine the fair market value of the subject property as of October 1, 2013, 2014, 2015, and 2016. In this endeavor, he inspected the property on three occasions, and testified to his personal familiarity of the site as a driver of a vehicle on Interstate 78.

To estimate the land value as vacant, Borough's expert sought sales of similar plots and analyzed them based on location, time of sale, size and physical characteristics, utility, and other factors which are felt to influence value. As stated in his report, the reliability of the sales comparison approach is dependent upon, (a) the availability of comparable sales data, (b) the verification of the sales data, (c) the degree of comparability or extent of adjustment necessary for time differences, and (d) the absence of non-typical conditions affecting "sales price."

Borough's expert verified his comparable sales with either the buyer, the seller, a closing attorney, a listing or selling broker or a contract of sale or deed. The unit comparison selected was dollars per acre of total land area given the underlying size of the subject's parcel. This method divides the total sales price by the total land size. Borough's expert's search for recent sales of similar vacant land gave a preference for nearby locations, zoned for commercial, truck stop, truck

repair or other similar transportation use, however he employed an expanded search parameter as far as he felt necessary to obtain a comprehensive picture. One or several of the numerous subject uses are permitted with all the comparable sales.

Borough's expert described the subject property as a "Rural-Type Hunterdon County location with excellent Interstate Highway Access" location along a heavily traveled street. Consideration was given to location, overall lot size, physical and function conditions of the parcel. Borough's expert acknowledged that although no single sale is considered exactly alike, nevertheless, the combined weight of the market data and trends provide support for his value conclusion. Additionally, Borough's expert determined that the annual value increase is less than 5% and therefore the value of 2013-2014 and 2015 to 2016 was considered similar.

Borough's expert considered the following aspects as significant to the overall comparability of the sale properties:

a. Terms of Sale/Special Financing: All the sales were financed conventionally or involved all cash to sellers; therefore, no financing adjustments were made. All sales were verified with deeds, owners or brokers and their respective tax assessor's Office & Planning Board.

b. Market Conditions/Time of sale. All the sales are recent transactions and no adjustments were warranted for time as they sold under market conditions.

c. Location. All the comparable sales are located in close proximity or relatively similar type per capita income areas and only minor adjustments were warranted. Comparable sales that are superior in terms of location as compared to the subject properties located in Bridgewater, Parsippany and Edison were adjusted downward. The remaining sales were considered similar in terms of location and no adjustments were warranted. The

13

majority of the comparable sales are located on County or adjoining State transportation routes similar to the subject property.

d. Lot Size. This adjustment recognizes the principles of economies of scale whereby larger lots tend to sell for less on a $/per acre basis, while smaller parcels tend to sell for more on a $/acre basis, all else being equal. Comparable sales that are 10 acres or greater in size were not adjusted. Comparable sales that are smaller than 10 acres in size were adjusted to account for economies of scale. The comparable sales vary in size from 3.49 acres to 19.68 acres versus the subject at 12.02 acres. The smaller parcels were adjusted downward while the larger parcels were adjusted upward.

e. Physical characteristics. Physical adjustments were made to the sales reflecting various difference in in overall physical appeal/characteristics, shape frontage corner influence, buildings to be removed, wetlands, approvals, etc. The subject site is irregular in shape. The subject parcel is a non-corner parcel which is similar to all the sales. The subject property has adequate street road frontage which is also similar to all of the sales and no adjustments were warranted. All of the sites are generally similar for most physical characteristics and for development potential. None of the sales are considered to have topography that is substantially different compared to the subject property and no adjustments were warranted. Some of the sales have typical easements affecting portions of the site but none of them had any conditions affecting building envelope per zoning setback requirements and therefore no adjustments were warranted. All of the sales have similar frontage and vehicle access from a major transportation route compared to the subject property and no adjustments were warranted.

f. Zoning/Approvals.  Zoning adjustments were not made to the sales since they all allowed a variety of uses similar to the subject property.  The subject is located in a B-2 Highway Business zone with a variety of uses permitted.

Borough's expert selected eight land sales (**BLS#1 – 8**) occurring between February of 2013 and December of 2016.

**BLS#1** is in Franklin Township, Somerset County and took place in February 2013.  The 5.03-acre site fronts Old New Brunswick Road.  It is zoned C-B Commercial Business.  The property is mostly level with an irregular shape.  All public utilities are available.  The purchaser at his expense obtained approvals prior to closing.  The site has good frontage and visibility.  Permitted uses include auto uses, office buildings, laboratories, hotels, data processing, fueling or administrative dispatch service, and hospitals.  The purchaser developed the property into a nursing home facility.

The site was purchased for $1,500,000 with a unit price per acre of $298,211.  Borough's expert made a downward adjustment of 10% for lot size and a downward adjustment of 10% for zoning and approvals.  In his closing, counsel for the Borough advised the court that the 10% downward adjustment for approvals should have been a 10% upward adjustment.  The court has corrected the adjusted price accordingly with an adjusted price per acre of $298,211.

The court accepts this sale as comparable due to its location, zoning, time of sale, utilities, and topography.  The court finds an additional 10% positive adjustment is required as the subject property is in a superior location due to its proximity to the Interstate 78 interchange.  (The Borough's expert utilized a 10% adjustment for a superior location, which this court adopts in the context of an interchange property).  The weight to be given to this sale is impacted by its physical

distance from the subject property and closer proximity to the metropolitan areas, as well as the Interstate 78 or other major transportation routes, and its less rural characteristics.

**BLS#2** involved a 34.76 acre industrially zoned site in located in Monroe Township, Middlesex County. The level, non-corner irregular shaped property was sold for $11,000,000 in December 2013 to the Matrix conglomerate, for the purpose of constructing a 550,000 square foot distribution center with 87 loading docks. The rear non-accessible portion of the property is bordered by the New Jersey Turnpike, and the front of the property provides access to Cranbury South River Road. The site is near Exit 8 of the turnpike which is a major trucking distribution area. The unit price per acre of $316,456 was adjusted upward for lot size by 10% leaving it with an adjusted value of $348,102 per acre.

The court gives no weight to **BLS#2** based upon its industrial zoning, which the court finds is not reasonably or reliably comparable. Commercial zoning generally means that the land has permitted uses for business that interact with the public, like offices, retail shops, restaurants, and banks. Generally, these businesses are quiet and low maintenance, and compliment residential and agricultural land uses. Industrial zoning is a designation generally given to businesses that are not open to the public, are generally on large pieces of property, have special environmental and noise concerns, and are used for manufacturing or distribution.

**BLS#3** consists of two continuous sites located along Route 31 in Flemington, Hunterdon County. The site is irregular in shape with public utilities available. The site is zoned C-R Commercial with permitted uses that include manufacturing, commercial indoor recreational facilities, offices, agriculture, child care centers, wholesale uses, clubs and lodges, animal hospitals and farm stands. It has a total size of 3.49 acres. After purchase the owner subdivided the land into two condominium unit sites for commercial development and a bank branch. The owner has

16

applied for residential development for the rear portion of the property, although at the time of trial it remained undeveloped.

The property was purchased in September 2013 for $1,440,000, which equals $412,607 per acre. Borough's expert made a single adjustment of a negative 10% for lot size, leading to an adjusted value of $350,716 per acre.

The court gives no weight to **BLS#3** based upon its location, which the court finds is not reasonably or reliably comparable due to its distance from the subject property, its distance from major transportation routes, and its socioeconomic characteristics. While Flemington is in Hunterdon County, the other influencing factors render this sale too remote to be of use for valuation purposes.

**BLS# 4** is located on Oak Tree Road in Edison Township, Middlesex County. It sold in January of 2014. It is located off Wood Avenue and is approximately a quarter mile from the Garden State Parkway and Route 27. It was purchased in January 2014 for $3,600,000. It is comprised of 7.65 acres on a level, non-corner irregularly shaped lot. The property was purchased for the purpose of commercial redevelopment as a retail strip center. It is zoned O-S Commercial retail with permitted uses that include business and medical offices, barber shops, services establishments, retail sales of books and such, antiques stores, banks, and single family homes. It was originally a distribution hub for propane and gas canisters, where trucks would come in, pick up and drop off, and then take the canisters to their customers. Borough's expert made a 10% negative adjustment for location to the $470,588 per acre purchase price resulting in and adjusted value of $423,529 per acre.

The court gives no weight to **BLS#4** due to reasons recognized by borough's expert in his testimony. It's location in Edison, Middlesex County renders population density and overall values that are higher in value than the subject property (superior) and difficult to adjust accurately.

**BLS#5** involves the sale of an 18.30-acre parcel of land located in Dayton, Middlesex County on Corn Road near Route 130. The rear portion of the property is bordered by Conrail and a railroad easement runs across a portion of the property. It was purchased in March 2014 for $5,900,000. The zoning is I-3 Industrial with permitted uses that include offices, industrial activities, warehouses, research laboratories, wholesaling of goods and services, data centers, lodging, mini-warehouses, truck dealerships, e-commerce fulfillment centers, parcel deliveries, and discount clubs. The land was sold with approvals for a 315,000 square foot industrial/distribution building. All public utilities are available.

Borough's expert made a 10% negative adjustment for location to the $470,588 per acre purchase price resulting in and adjusted value of $423,529 per acre.

The court gives no weight to **BLS#5** based upon its industrial zoning, which the court finds is not reasonably or reliably comparable.

**BLS#6** located on Ridge road near Route 130 in Dayton, Middlesex County sold in March 2015 for $6,250,000. The 18.30 acres are zoned I-3 Industrial with permitted uses of offices, industrial activities, warehouses, research laboratories, wholesaling of goods and services, data centers, lodging, mini-warehouses, truck dealerships, e-commerce fulfillment centers, parcel deliveries, and discount clubs.

The lot is an irregular non-corner level lot sold for redevelopment. The site had an existing data center that was vacant since 2005. The property was sold with the purpose of developing a

state-of-the-art warehouse/distribution center.  All public utilities are available.  The Borough's expert made no adjustments to the $317,581 per acre purchase price.

The court gives no weight to **BLS#6** based upon its industrial zoning, which the court finds is not reasonably or reliably comparable.

**BLS#7** involves a 5.26-acre parcel located along Route 22 in Bridgewater, Somerset County, just beyond the Branchburg municipal line close to Hunterdon County.  It sold in December 2016 for $2,440,000.  Sale of a vacant parcel of land with approvals for the development of a nursing care facility.  The site is zoned C-3 Office/Service with permitted uses that include business and medical offices, essential services, nursing homes, parking, health clubs, wellness centers, gyms, and outpatient surgical centers.  It has frontage along Route 22, is level, and has all public utilities available.  Property was marketed in late 2015 through 2016 and closed in March 2017.

Borough's expert made a 5% negative adjustment for location, and a 10% negative adjustment for lot size to the $464,638 per acre purchase price resulting in and adjusted value of $394,942 per acre.

The court accepts this sale as comparable due to its location, zoning, time of sale, utilities, and topography.  The court finds an additional 10% positive adjustment is required as the subject property is in a superior location due to its proximity to the Interstate 78 interchange.  (The Borough's expert utilized a 10% adjustment for a superior location, which this court adopts in the context of an interchange property).  The weight to be given to this sale is impacted by its physical distance from major transportation routes, closer proximity to the metropolitan areas, and its less rural characteristics.

**BLS#8** involves a 5.28-acre industrially zoned irregularly shaped parcel located on Bleeker Street near Interstate 78 in Milburn, Essex County. It was sold in December 2016 for $2,400,000. At the buyer's expense they received approvals to develop a self-storage facility on the site. According to the broker, the buyer spent $500,000 on demolition and other site expenses to make the site ready for construction. The site was near contract in December 2016 however closing was delayed until July 2017 due to the approval process.

Borough's expert made a 10% negative adjustment for location and a 10% negative adjustment for lot size to the $454,545 per acre purchase price resulting in an adjusted value of $363,636 per acre.

The court gives no weight to **BLS#8** based upon its industrial zoning, which the court finds is not reasonably or reliably comparable.

### 3. Analysis and Conclusions of Value

New Jersey law establishes that real property, with the exception of certain farmland, shall be assessed for taxes on the basis of full and fair value, which means the price at which the property would sell for at a fair and bona fide sale by private contract on October 1 of the pretax year. The sale should be considered as one between the willing buyer and the willing seller. The three recognized approaches to value (Cost, Income Capitalization, and Sales Comparison) assist in the determination of value but are not in and of themselves controlling evidence. The selling price of property at a fair and bona fide sale by private contract is an evidential guide to determining value but is not controlling. Many factors form the basis for statutory valuation and the general doctrine is that valuation is not to be tested rigidly by any one factor.

It has long been noted that unique properties impose difficult valuation issues not only for the litigant's appraisers, but also for the litigants, lawyers, and the Tax Court itself. In the appeals

at hand, the lack of comparable sales of properties adjacent to or near a New Jersey Interstate interchange while problematic, is not the least bit surprising. Nor is the absence of comparable sales with the same highest and best use as the subject property. The lack of any comparable vacant land sales in Bloomsbury and the difficulty in selecting comparable vacant land sales in Hunterdon County is perfectly understandable given their rural nature. Nonetheless, every taxpayer has the right to have a fair assessment of their property. For this reason, the Tax Court has the right and the duty to apply its own judgment to the information presented to it by way of facts and expert opinion in order to arrive at a true value and fix an assessment for the tax years in question.

In the instance of a non-unique property, the issue of comparable sales arises in the context of admissibility. The easiest setting in which to understand the use of comparable sales is that of a residential subdivision of tract homes. If there had been four or five sales of similar properties within one or two blocks of each other in such a development, such comparable sales would surely be admissible and would be the clearest indication of proof. See Moorestown Twp. v. Slack, 85 N.J. Super. 109, 115 (App. Div. 1964) (sales of 121 lots in a Moorestown Heights tract). The general principles to be adhered to are that

> [n]otwithstanding the "substantial similarity and conditions" test for admissibility of comparable sales. . . there is pronounced recognition . . . that such similarity need not obtain in *all* comparative respects, so long as there is sufficient similarity in *some* significant respects to permit the expert testifying, or the fact-finder, to draw rational probative valuation inferences from the sales cited, after weighing and allowing for such differences as do obtain between the properties sold and that which is the subject of the valuation litigation. The weight to be accorded the sales, either as direct evidence of value or as support for the expert's opinion of value, is for the fact-finder.
>
> [Id. at 114]

Courts have recognized and addressed this predicament by granting trial courts a wide discretion in determining the admissibility of sales sought to be comparable. Our Supreme Court has emphasized that the Tax Court has an obligation to use its "'special qualification[s], knowledge and experience'" in reaching a determination of value. Glen Wall Assocs. v. Twp. of Wall, 99 N.J. 265, 280 (1985) (quoting N.J.S.A. 2A3A-13). The premise of Glen Wall is that because of the Tax Court's special expertise in these matters, it "has not only the right but the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." Id. at 280 (quoting New Cumberland Corp. v. Borough of Roselle, 3 N.J. Tax 345, 353 (Tax 1981)).

This court accepts that there is a significant difference in opinion between the two experts as to the land value of the subject property, despite the fact that they were able to reconcile the differences in their improvement values. Taxpayer's expert gave an opinion of land value of $60,000 per acre for all four tax years. The Borough's expert gave an opinion of land value of $315,000 per acre for tax years 2013 and 2014, and $325,000 per acre for tax years 2015 and 2016.

As Judge Rimm so succinctly wrote in Atlantic City v. Ginnetti, 17 N.J. Tax 354, 361-62 (1998):

> No doubt, this case is a classic example of the kind of case which resulted in the principle of law that a court may accept an expert's opinion, may reject an expert's opinion in total, or may accept part of an expert's opinion and reject other parts of it. The Judiciary and fact-finding bodies are not bound by the opinions of expert witnesses. Wright v. Purepac Corp., 82 N.J. Super. 100, 111, 196 A.2d 695 (Cty.Ct.1963). The weight to be given to an expert's opinion depends especially upon the facts and reasoning which are offered as the foundation of his opinion. Ocean County v. Landolfo, 132 N.J. Super. 523, 528, 334 A.2d 360 (App.Div.1975). The weight and value of expert testimony are for the trier of the facts. Robbins v. Thies, 117 N.J.L. 389, 398, 189 A. 67 (E. & A.1937). An expert's opinion may be adopted in whole or in part or completely rejected. Middlesex County v. Clearwater Village, Inc., 163 N.J. Super. 166,

174, 394 A.2d 390 (App.Div.1978), certif. denied, 79 N.J. 483, 401 A.2d 239 (1979).

[17 N.J. Tax at 361-62.]

It is further recognized that the trial court must be granted "a wide discretion" in determining the admissibility of sales sought to be relied on as comparable. Ford Motor Co. v. Edison, 127 N.J. 290 (1992).

It is with this backdrop and recognition of responsibility, that this court accepts **TLS#5, TLS#7, BLS#1 and BLS#7** as the most reasonably reliable comparable sales to determine fair market value when considered together after weighing the strengths and weaknesses of their similar and distinguishing characteristics.

After adjusting each of these four sales by an additional positive 10% to reflect the superior location of the subject property due to its situate adjacent to an interchange, the adjusted values per acre are $49,944, $59,400, $328,032, and $434,436. The court also recognizes that the borough's expert included a separate lot, which this court has previously determined to have its own individual value, thus slightly inflating the borough's two adjusted comparable sales values. After weighing all factors and encompassing all conditions which influence real estate value as set forth by the experts, the court maintains its opinion that the land value of the subject property, as of the October 1, 2013, 2014, 2015 and 2016 appraisal dates is a per acre value of $200,000.

Once the court accepted both experts' conclusion that the subject property was unique, logic dictated that the comparable sales were not going to be a "one size fits all" or "hand in glove" variety. Flexibility, not rigidity, was required to determine a fair valuation.

Borough's counsel emphasized repeatedly that the three most important factors in valuing land sales are location, location, location. The court agrees. The first location the court focused on was geographic proximity - property in Bloomsbury, near Bloomsbury, and finally in

Hunterdon County. The second location element considered was property at or near an interchange. The third location was property further away geographically (and in these cases the borough's comparable sales are all closer to the large metropolitan areas) that borders or is in near proximity to main travel transportation roadways. These three locational elements were most significant in the court's selection of comparable sales.

At the conclusion of his closing argument, counsel for the Borough encouraged this court, in its endeavor to be fair and just, to consider the 2006 sale of a travel center/truck stop in a neighboring community for the sum of six million dollars. He continued by telling the court that this was the best evidence of the subject property's market value. Given the facts of the case and its procedural history, this argument is astonishing. This court cannot fathom anything being less fair. The sale was mentioned by the non-expert assessor and rejected by both experts when determining their approach to value. The sale price reflects nothing of relevance or significance to this court, as the court knows nothing about the sale itself and the division of value between tangible property and intangible property.

After thorough review of the evidence, consideration of the closing arguments of counsel, review of the relevant case law including the cases submitted to the court, and reconsideration of all elements of valuation, this court reaffirms its prior determination of value for all four tax years. The court is convinced by a fair preponderance of the evidence that reasonable and reliable evidence submitted by the parties provided a credible estimation of fair market value for the subject property. The court finds insufficient evidence that the land sale values changed during the valuation dates at issue. When the court's conclusions of land value are added to the stipulated depreciated replacement costs, the conclusion of true market value on the relevant valuation dates is as follows:

| Tax Year | Land | Improvements | Total |
|----------|------|--------------|-------|
| 2014 | $2,404,000 | $2,647,350 | $5,051,350 |
| 2015 | $2,404,000 | $2,638,483 | $5,042,483 |
| 2016 | $2,404,000 | $2,597,386 | $5,001,386 |
| 2017 | $2,404,000 | $2,461,079 | $4,865,079 |

/s/ Mary Siobhan Brennan, J.T.C.